EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Christian Colón Negrón; María Negrón Santiago<br>Recurrida<br><br>v.<br><br>Municipio de Bayamón y Compañía Aseguradora Admiral Insurance Company<br>Peticionarios<br><br>----------------<br>Mariel Pérez Santiago<br>Recurrida<br><br>v.<br><br>Municipio de Bayamón por conducto de su Hon. Alcalde Ramón Luis Rivera, hijo; Admiral Insurance Company, Fulano de Tal<br>Peticionarios<br><br>----------------<br>María Maldonado Roche<br>Parte Demandante<br><br>v.<br><br>Municipio de Bayamón, representado por su Alcalde, Hon. Ramón Luis Rivera Cruz<br>Parte Demandada-Peticionaria<br><br>Estado Libre Asociado de Puerto Rico<br>Parte Demandada-Recurrida<br><br>Personas de nombres desconocidos B & C; Compañías Aseguradoras 2, 3 & 4 | CERTIORARI<br><br>2015 TSPR 23<br><br>192 DPR ____ |

Número del Caso: CC-2013-400 consolidad con: CC-2013-500 y CC-2013-605

Fecha: 10 de marzo de 2015

Tribunal de Apelaciones:

Región Judicial de Bayamón

Abogados de la Parte Peticionaria:

Lcdo. Manuel Herrero García

**CC-2014-0400 cons.**                                    **2**
**CC-2014-0500 cons.**
**CC-2014-0605**

          Lcda. Karen Morales Pérez

Abogados de la Parte Recurrida:

          Lcda. Lourdes Gómez Vedo
          Lcdo. Rosendo Miranda
          Lcdo. Miguel Negrón Matta

Materia: Procedimiento Civil -Regla 12.1 – Comparecencia de parte como tercero demandado o como parte indispensable.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Christian Colón Negrón; María Negrón Santiago<br>Recurrida<br><br>v.<br><br>Municipio de Bayamón y Compañía Aseguradora Admiral Insurance Company<br>Peticionarios<br><br>----------------<br>Mariel Pérez Santiago<br>Recurrida<br><br>v.<br><br>Municipio de Bayamón por conducto de su Hon. Alcalde Ramón Luis Rivera, hijo; Admiral Insurance Company, Fulano de Tal<br>Peticionarios<br><br>----------------<br>María Maldonado Roche<br>Parte Demandante<br><br>v.<br><br>Municipio de Bayamón, representado por su Alcalde, Hon. Ramón Luis Rivera Cruz<br>Parte Demandada-Peticionaria<br><br>Estado Libre Asociado de Puerto Rico<br>Parte Demandada-Recurrida<br><br>Personas de nombres desconocidos B & C; Compañías Aseguradoras 2, 3 & 4 | CC-2013-0400<br><br><br><br><br>Consolidado con:<br><br><br><br><br><br><br><br>CC-2013-0500<br><br><br><br><br><br><br>CC-2013-0605 |

Opinión del Tribunal emitida por el Juez Asociado Señor Rivera García

En San Juan, Puerto Rico, a 10 de marzo de 2015.

Los recursos que nos ocupan surgen a raíz de varias reclamaciones por daños y perjuicios que se presentaron contra el Municipio de Bayamón. En el contexto de estos pleitos, nos corresponde resolver si el Departamento de Hacienda debe figurar como una parte indispensable o como un tercero demandado. Por estas acciones judiciales poseer controversias similares, el 7 de marzo de 2014 consolidamos los recursos de título. Examinado el estado de derecho, concluimos que el mecanismo procesal aplicable para traer a estos litigios al Departamento de Hacienda es la Regla 12.1 de Procedimiento Civil, 32 L.P.R.A. Ap. V, que rige el procedimiento de la demanda contra tercero. Con el objeto de elaborar sobre ese análisis, es necesario resumir los hechos procesales y fácticos que enmarcan la decisión que hoy emitimos.

I

Se desprende de los expedientes ante nuestra consideración, que a partir de los años fiscales 2005-2006 hasta el 2009-2010, el Departamento de Hacienda contrató a nombre de los municipios de Puerto Rico con Admiral Insurance Company (Admiral), una póliza para asegurarlos ante las reclamaciones generadas por responsabilidad civil extracontractual. En esta, se identificó como asegurados a los municipios de Puerto Rico. De acuerdo a las partes, ello se realizó conforme al apartado 3 del Artículo 12.020(3) del Código de Seguros de Puerto Rico, 26 LPRA

sec. 1202(3), que faculta al Secretario de Hacienda a gestionar y contratar los seguros de los Municipios de Puerto Rico[1], y, conforme al Art. 8.011 de la Ley de Municipios Autónomos de Puerto Rico que delega esa facultad en el Secretario de Hacienda. 21 LPRA sec. 4361.[2]

---

[1] Esta disposición, en su parte pertinente, lee como sigue:

"Seguros que cubran los riesgos del Estado Libre Asociado de Puerto Rico, sus dependencias, entidades, corporaciones, autoridades y municipios.- Con relación a estos seguros el Comisionado dictará reglas y reglamentos para establecer las condiciones y obligaciones que mejor protejan al interés público y que garanticen asimismo un trato justo y razonable al asegurador, debiendo incluir en éstas una regla para que todo asegurador o agente general que cubra riesgos del Estado Libre Asociado venga obligado a someter, dentro de los noventa (90) días siguientes a la terminación del año natural, una relación detallada de las pérdidas pagadas y reclamaciones pendientes contra la póliza o pólizas de seguro contratadas. Por medio de estas reglas y reglamentos el Comisionado podrá autorizar, cuando lo crea necesario o conveniente, que se coticen primas diferentes a las que aparecen fijadas en el Manual de Tarifas.

Excepto en aquellos casos en que por ley se disponga de otro modo, el Secretario de Hacienda gestionará y contratará los seguros del Estado Libre Asociado y sus municipios".

[2] Ley Núm. 81-1991. En lo pertinente, esta ley dispone:

Los municipios tendrán la obligación de proteger sus activos y recursos contra todo tipo de pérdida financiera resultante de las contingencias o riesgos mencionados en el inciso (c) de esta sección.

(a) A los fines de cumplir con la obligación antes impuesta, los municipios utilizarán los mecanismos para tratar riesgos que disponga el Secretario de Hacienda
[…]
(c) Los mecanismos para tratar riesgo que disponga el Secretario de Hacienda deberán proveer, según éste lo determine, protección a los municipios contra todo riesgo puro. Se entenderá por riesgos puros aquellos que puedan causar al municipio una pérdida financiera pero no una ganancia, incluyendo:
[…]
(3) Pérdidas por todo tipo de reclamación por daños y perjuicios…

(d) El Secretario de Hacienda actuará en representación de los municipios, en la forma que estime más conveniente, económica y ventajosa para éstos, en todo lo relacionado con la protección de sus activos contra pérdidas resultantes de los riesgos puros. En el desempeño de esta responsabilidad, el Secretario estará facultado, entre otras cosas, para decidir el mecanismo que se utilizará para tratar los riesgos a cubrir, los límites de la cobertura, los términos contractuales que aplicarán a la misma y la aportación, cuota o prima que habrá de pagar el municipio por

Sostiene el peticionario (Municipio de Bayamón) que este programa de seguros al que hemos hecho referencia incluía a los 78 municipios, y que cada uno de estos aportaba una suma anual proporcional a lo que se entendía que era su responsabilidad de historial de experiencia de pérdida, lo que se agrupaba en un fondo común o agregado. Añade, que los importes que hacían los municipios a ese fondo provenían de las retenciones que el Departamento de Hacienda realizaba de la contribución sobre la propiedad que se recaudaba para cada municipio.  Y que de esta forma, del agregado contratado por año fiscal se descontaban los gastos legales y se pagaban las indemnizaciones por reclamaciones extrajudiciales y judiciales incoadas contra los municipios. Este litigio tiene su origen en sendas demandas por daños y perjuicios que se presentaron contra el Municipio de Bayamón y su aseguradora Admiral entre los años 2009 y 2011. Procedemos a detallar los pormenores de cada una de estas.

---

la cobertura que habrá de recibir y los procedimientos a seguir en el trámite, ajuste y negociación de reclamaciones.
[…]
(e) El Secretario de Hacienda, en consulta con el Comisionado, dispondrá por reglamento los criterios, requisitos y procedimientos que se aplicarán en todo lo relacionado con el tratamiento de los riesgos que pueden causar pérdidas financieras a los municipios …
[…]
 (f) El importe de las cuotas, aportaciones o primas que corresponda a cada municipio por concepto del costo de la protección contra pérdidas financieras que establece esta sección, se pagarán de los fondos municipales.
[…]
La facultad del Secretario de Hacienda quedará sujeta a la discreción del municipio conforme a lo establecido en el inciso (v) de la sec. 4054 de este título.

En el recurso CC-2013-400, la Sra. María Negrón Nazario y el Sr. Christian Negrón Colón presentaron una demanda por los alegados daños que sufrieron cuando este último tropezó con el borde de una caja subterránea mientras caminaba por una acera del Municipio de Bayamón.[3] Por su parte, en el recurso CC-2013-0500, la Sra. Mariel Pérez Santiago le reclamó a esa misma municipalidad el resarcimiento de los daños que alegadamente sufrió cuando resbaló y cayó al suelo en la Casa Alcaldía.[4] Por último, en el recurso CC-2013-0605 la Sra. María Maldonado Roche presentó en el 2009 una demanda por daños y perjuicios contra el Gobierno de Puerto Rico y la Autoridad de Carreteras en la que alegó que sufrió daños cuando tropezó en una acera en Bayamón.[5] En este último caso, el Tribunal de Primera Instancia decretó el archivo sin perjuicio de la demanda en cuanto al Estado. Consecuentemente, la demandante enmendó la demanda para incluir como demandados al Municipio de Bayamón y a Admiral Insurance.

Si bien la génesis de estos tres casos es diferente –pues las reclamaciones no se relacionan entre sí– el trámite procesal que siguieron es el que desencadenó la controversia que nos atañe atender. Trascendió que luego

---

[3] La demanda se presentó el 10 de noviembre de 2010. Apéndice de la petición de *certiorari* CC-2013-0400, pág. 31.

[4] Véase, Demanda. Apéndice de la petición de *certiorari* CC-2013-0500, pág. 33.

[5] Véase, Demanda. Apéndice de la petición de *certiorari* CC-2013-0605, pág. 33. Ambos demandados solicitaron que se desestimara la reclamación en su contra porque, entre otras cosas, no tenían jurisdicción sobre el área donde ocurrió el accidente.

de que los demandados contestaran la demanda en los tres casos, el foro primario dictó sendas sentencias parciales y desestimó cada causa de acción contra Admiral. Es ante esa situación que el Municipio de Bayamón esgrime el planteamiento que presenta ante esta Curia. Es decir, sostiene que el Departamento de Hacienda debe figurar en estos pleitos como parte indispensable o como un tercero demandado. Veamos los incidentes acaecidos en el foro de primera instancia.

De conformidad con el expediente, Admiral emitió un Aviso de Cancelación de la póliza de seguro contratada para los municipios por haberse agotado el límite del fondo agregado.[6] En vista de ello, el abogado del municipio provisto por Admiral le solicitó al Tribunal de Primera Instancia que lo relevara de dicha representación legal y que se desestimara la acción en contra de esa compañía aseguradora.[7] Argumentó que conforme a la póliza pactada, la responsabilidad financiera sobre el litigio recaería en adelante sobre el Departamento de Hacienda. Eventualmente, el Tribunal de Primera Instancia emitió sentencias

---

[6] Véanse: *Moción 'urgente' de renuncia a representación legal*, Apéndice de la petición de *certiorari* CC-2013-0400, pág., 40; *Solicitud 'urgente' de sentencia sumaria y renuncia a representación legal,* Apéndice de la petición de *certiorari* CC-2013-0500, pág. 44; *Solicitud de sentencia sumaria y renuncia a representación legal*, Apéndice de la petición de *certiorari* CC-2013-0605, pág. 95.

[7] Id.

parciales archivando sin perjuicio los casos aludidos en cuanto a esta parte.[8]

Subsiguientemente, en los referidos pleitos el Municipio de Bayamón presentó mociones para que el tribunal autorizara presentar una demanda contra tercero contra el Departamento de Hacienda.[9] En sus escritos, puntualizó que ello procedía debido a que el Departamento "fue negligente en el descargo de su deber impuesto por ley de representar a los municipios en todo lo relacionado a los seguros para tratar y cubrir los riesgos…".[10] El peticionario añadió que la alegada negligencia redundaba en que tendría que pagar la sentencia que recayera en su contra, si alguna, de los fondos de las remesas del Centro de Recaudación de Ingresos Municipales (CRIM) destinados al municipio y que ello resultaría en un menoscabo de sus activos. Asimismo, arguyó que por esa razón el Departamento de Hacienda era la entidad que le debería responder a los demandantes por cualquier cuantía que tuviera que resarcir a estos. Atendido el planteamiento,

---

[8] Apéndice de la petición de *certiorari* CC-2013-0400, pág. 53; Apéndice de la petición de *certiorari* CC-2013-0500, pág. 52; Apéndice de la petición de *certiorari* CC-2013-0605, pág. 117.

[9] Véanse: *Urgente Moción en solicitud de permiso para presentar demanda contra terceros* presentada en el caso CC-2013-0400, Apéndice de la petición de *certiorari* CC-2013-0400, pág. 56; *Moción en solicitud de permiso para presentar demanda contra terceros* presentada en el caso CC-2013-0500, Apéndice de la petición de *certiorari* CC-2013-0500, pág. 62.

[10] Id.

en diciembre de 2012 el foro de primera instancia declaró dichas solicitudes no ha lugar.[11]

Posteriormente, el Municipio intentó traer al pleito al Departamento de Hacienda amparándose en que esa agencia era una parte indispensable. Nuevamente, su contención giraba en torno a los mismos argumentos que presentó cuando solicitó incluir a la referida agencia como tercero demandado. En específico, indicó que el Departamento de Hacienda era parte indispensable debido a que

> fue negligente en el descargo de su deber impuesto por ley de representar a los municipios en todo lo relacionado a los seguros para tratar y cubrir los riesgos incluyendo los términos contractuales cubiertos […] quedando el Municipio de Bayamón desprovisto de un mecanismo para tratar los riesgos puros y proteger sus activos y recursos. Por lo que el Departamento de Hacienda […] le es responsable a los demandantes de cualquiera sumas de dinero que el Municipio de Bayamón le pueda responder a éstos. (Énfasis suprimido).[12]

De acuerdo al Municipio, como el Departamento de Hacienda sería la parte responsable ante los demandantes, sus intereses podían verse afectados en el pleito, por lo que debía considerarse como una parte indispensable. Luego de examinar esta tesis, el Tribunal de Primera Instancia

---

[11] Apéndice de la petición de *certiorari* CC-2013-0400, pág. 94; Apéndice de la petición de *certiorari* CC-2013-0500, pág. 107.

[12] Apéndice de la petición de *certiorari* CC-2013-0400, págs. 95-96. Véanse además: *Moción solicitando orden para intervención de parte indispensable y/o moción de desestimación* presentada en el recurso CC-2013-0500, Apéndice de la petición de *certiorari* CC-2013-0500, pág. 118 y *Moción de reconsideración,* presentada en el recurso CC-2013-0605, Apéndice de la petición de *certiorari,* pág. 144.

declaró no ha lugar la petición.[13] Inconforme con esa determinación, el Municipio acudió al Tribunal de Apelaciones.

Examinados los planteamientos, el foro apelativo intermedio revocó las órdenes recurridas. En cada uno de los casos empleó el mismo razonamiento. En sus dictamenes, afirmó que el Departamento de Hacienda era una parte indispensable porque era responsable de brindar un mecanismo para el pago de las reclamaciones contra los municipios. Sin embargo, ese foro judicial no compartió el criterio del peticionario en cuanto a que el Departamento de Hacienda les respondía directamente a los demandantes. En lo pertinente, señaló que:

> …la comparecencia del Departamento de Hacienda, como parte en el pleito en cuestión, es necesaria para hacer efectivo, en su día, el cobro de la compensación económica por los daños sufridos que pudiera otorgar el tribunal a favor del reclamante, ya sea de un nuevo fondo agregado o mediante una retención directa de la remesa al municipio de las futuras contribuciones territoriales cobradas a través del CRIM.[14]

No conteste con la sentencia del foro apelativo, el Municipio de Bayamón presentó los recursos de *certiorari* aquí consolidados y señaló la comisión de los errores siguientes:

---

[13] Apéndice de la petición de *certiorari* CC-2013-0400, pág. 122; Apéndice de la petición de *certiorari* CC-2013-0500, pág. 130; Apéndice de la petición de *certiorari* CC-2013-0605, pág. 175.

[14] Sentencia, Apéndice de la petición de *certiorari* CC-2013-0400, págs. 160-161. Véanse además: Sentencias del Tribunal de Apelaciones en los recursos CC-2013-0500 (Apéndice de la petición de certiorari, pág. 182) y CC-2013-0605 (Apéndice de la petición de certiorari, pág. 217).

**Primer Error**: Erró el Honorable Tribunal de Apelaciones al limitar la comparecencia del Departamento de Hacienda del Estado Libre Asociado de Puerto Rico a los efectos de que este es necesario para hacer efectivo, en su día, el cobro de la compensación económica por los daños sufridos que pudiera otorgar el foro de instancia a favor de la parte demandante recurrida, ya sea de un nuevo fondo agregado o mediante una retención directa de la remesa al Municipio de las contribuciones territoriales cobradas a través del CRIM y no para que responda directamente a los demandantes por lo que el Municipio de Bayamón pudiera ser responsable a las partes dada su negligencia en la contratación de los seguros de responsabilidad pública de los municipios y la negligencia en la administración del fondo común o agregado de los mismos.[15]

**Segundo Error**: Erró el Honorable Tribunal de Apelaciones al no permitir al municipio presentar la evidencia que posee para demostrar la negligencia del Departamento de Hacienda y que hace que este último le sea responsable por cualquier sentencia por daños que le sea impuesta al municipio de Bayamón, la cual ocasionaría un daño sustancial al municipio.

Así las cosas, el 29 de octubre de 2013 el Gobierno de Puerto Rico, en representación del Departamento de Hacienda, nos solicitó autorización para comparecer como amigo de la corte. En atención a ello, el 22 de noviembre de ese año autorizamos su participación. Consecuentemente, el Departamento de Hacienda presentó su escrito como amigo de la corte en los recursos CC-2013-400 y CC-2013-500. Explicó que una vez recae una sentencia contra un

---

[15] En el recurso CC-2013-0400 el municipio señaló como único error el siguiente:
  "Erró el Honorable Tribunal de Apelaciones al limitar la comparecencia como parte indispensable del Departamento de Hacienda del Estado Libre Asociado de Puerto Rico a que esta permite hacer efectiva la reclamación de los demandantes del tribunal emitir una determinación adjudicando responsabilidad al municipio de Bayamón frente al reclamo de los demandantes por lo que el municipio de Bayamón pudiera ser responsable frente a los demandantes".

Municipio, la agencia procesa el pago con fondos
provenientes de las retenciones que se hacen de las
remesas del CRIM. Por ello, arguyó que su acumulación como
parte indispensable era innecesaria porque puede realizar
ese trámite sin formar parte de los litigios.

Por otra parte, afirmó que la controversia principal
en estos casos se circunscribe única y exclusivamente a la
responsabilidad del peticionario de mantener seguras sus
áreas. Añadió que por economía procesal, cualquier reclamo
que el Municipio de Bayamón tuviera contra el Departamento
de Hacienda debía dilucidarse en un pleito independiente,
ya que lo contrario implicaría litigar ese mismo asunto
dentro de los cientos de casos sobre daños y perjuicios
incoados contra los municipios.

Por su parte, en el recurso CC-2013-500 compareció la
parte recurrida, la Sra. Mariel Pérez Santiago. Expuso en
su alegato de oposición que en este caso no se presentan
los elementos requeridos para acumular al Departamento de
Hacienda como parte indispensable o como tercero
demandado. Además, sostuvo que la reclamación que pudiera
tener el Municipio contra el Departamento de Hacienda no
se desprendía de los hechos que dieron base a la demanda
original de daños y perjuicios. Por último, apuntó que la
reclamación del Municipio no depende en forma alguna del
resultado de esa acción de daños.

Luego de exponer el tracto procesal de estos recursos, y contando con el beneficio de la comparecencia de las partes y del Departamento de Hacienda, pasamos a resolver.

II

Previo a considerar si el Tribunal de Apelaciones erró al limitar la comparecencia del Departamento de Hacienda para que hiciera efectivo el pago de la sentencia que en su día, si alguna, tenga que pagar el peticionario, debemos determinar si esta agencia es parte indispensable en estos pleitos. Examinemos el derecho aplicable a este asunto.

Como sabemos, la Regla 16.1 de Procedimiento Civil atiende el mecanismo para incluir a una parte indispensable en un litigio ya comenzado, preceptuando lo siguiente:

> Las personas que tengan un interés común sin cuya presencia no pueda adjudicarse la controversia, se harán partes y se acumularán como demandantes o demandadas, según corresponda. Cuando una persona que deba unirse como demandante rehúse hacerlo, podrá unirse como demandada. 32 LPRA Ap. V.

Este precepto se fundamenta en dos axiomas: primero, en la protección constitucional que impide que las personas sean privadas de su libertad o propiedad sin un debido proceso de ley, y segundo, en la necesidad de que se emita un decreto judicial completo. Cepeda Torres v. García Ortiz, 132 DPR 698, 704 (1993). Recientemente en Cirino González v. Adm. Corrección et al., 190 DPR 14, 46

(2014), reiteramos que una parte indispensable se define como:

> aquella que tiene tal interés en la cuestión envuelta en la controversia que no puede dictarse un decreto final entre las partes en la acción **sin lesionar y afectar radicalmente su interés**, o sin permitir que la controversia quede en tal estado que su determinación final haya de ser inconsistente con la equidad y una conciencia limpia. (Énfasis nuestro).

El objetivo de este mecanismo es evitar la multiplicidad de pleitos y los efectos perjudiciales que una sentencia adversa pudiera tener sobre la parte excluida en el caso. Id. En ese sentido, al adjudicar este asunto debemos considerar si se puede hacer justicia y conceder un remedio final y completo sin que se afecten los intereses del ausente. Romero v. S.L.G. Reyes, 164 DPR 721, 733 (2005). Se deduce, que con este mecanismo se intenta proteger los intereses de quien no se ha traído al litigio y que, de dejarse fuera, no tendría oportunidad alguna de defenderlos. Véanse: Bonilla Ramos v. Dávila Medina, 185 DPR 667, 677 (2012); Vilanova et al. v. Vilanova et al., 184 DPR 824, 839 (2012); Cepeda Torres v. García Ortiz, supra.

Ahora bien, ese "interés común" que da lugar a la acumulación no se trata de cualquier interés en el pleito. Tiene que ser "de tal orden que impida la confección de un decreto sin afectarlo". García Colón et al. v. Sucn. González, 178 DPR 527, 549 (2010). Además, debe ser real e

inmediato, no meras especulaciones o un interés futuro. Pérez Rosa v. Morales Rosado, 172 DPR 216, 223 (2012).[16]

Por otro lado, hemos reiterado que la omisión de incluir a una parte indispensable incide sobre el debido proceso de ley que cobija al ausente. Pérez Rosa v. Morales Rosado, supra, pág. 223; Romero v. S.L.G. Reyes, supra, pág. 733. Ante la ausencia de una parte indispensable, el tribunal carece de jurisdicción para resolver la controversia. Id. Es por ello que, al incidir tal ausencia en la jurisdicción del tribunal, debe desestimarse la acción. Por ello, es un argumento que puede traerse en cualquier parte del litigio, incluso en la etapa apelativa. Pérez Rosa v. Morales Rosado, supra, pág. 223.

Así también, en este tipo de análisis debe emplearse un "enfoque práctico" evaluando los intereses involucrados en diversos géneros de casos. J.A. Cuevas Segarra, Tratado

---

[16] Por ejemplo, en García Colón et al. v. Sucn. González, 178 DPR 527 (2010) al atender una controversia en cuanto a si un abogado era parte indispensable en una acción para anular un testamento señalamos:

> "…creemos que el licenciado Montañez Delerme no es parte indispensable en la acción para anular el testamento que autorizó. Su interés en dicha controversia no es real ni inmediato, sino contingente respecto a la consecuencia de la acción instada. Su interés no se ha concretado y depende de distintos factores que podrían materializarse luego de ser final y firme la anulación del testamento. Aun al amparo de los hechos de este caso, en que es palmario que la parte demandante desea reservar una acción civil contra el licenciado Montañez Delerme, el tribunal todavía tendría que dilucidar si la falta cometida por éste provino de su malicia, negligencia o ignorancia inexcusable. Es decir, todavía es incierto si el licenciado Montañez Delerme está obligado a responder civilmente por su actuación". Id. págs. 556-557.

de derecho procesal civil, 2da Ed., San Juan, Pubs. J.T.S., 2011, T. II, pág. 691. En ese sentido, la determinación final de si una parte es indispensable depende de los hechos específicos de cada caso, incluyendo: el tiempo, el lugar, las alegaciones, la prueba y las clases de derechos e intereses en conflicto. Cuevas Segarra, op. cit., pág. 695. Es por ello que los tribunales tienen que hacer un análisis juicioso que incluya la determinación de los derechos del ausente y las consecuencias de no unirlo como parte en el procedimiento. Pérez Rosa v. Morales Rosado, supra, pág. 223.

Así por ejemplo, en el precitado caso de Cirino González v. Adm. Corrección, et al., supra, resolvimos una controversia en la que se demandó a dos individuos en su carácter oficial, y señalamos que por ello era indiscutible que el Estado fuera parte indispensable. Esto, porque cuando se demanda por daños y perjuicios a un funcionario en su carácter oficial, la verdadera parte con interés es el Estado. Específicamente resolvimos que

> [s]i permitiéramos la demanda contra Marcucci y Burgos en su carácter oficial sin la presencia del ELA, **estaríamos exponiendo al Estado a una sentencia adversa** que podría incluir daños pecuniarios que el Estado tendría que pagar. (Énfasis nuestro). Id., pág. 47.

El Municipio de Bayamón acude a esta Curia aun cuando el Tribunal de Apelaciones determinó que el Departamento de Hacienda es parte indispensable en los casos que hoy nos ocupan. La razón por la que recurrió ante nos es

porque entiende que la presencia de esa agencia no debe circunscribirse únicamente a los efectos de tramitar el pago, si alguno, que en su día tenga que resarcir a los demandantes, tal y como resolvió el foro apelativo intermedio. El municipio de Bayamón sostiene que quedó indefenso en cuanto a las reclamaciones extracontractuales incoadas en su contra debido a que esa agencia no cumplió con el deber legal de gestionar las pólizas de seguro que cubrirían este tipo de pérdidas.[17] Argumenta que por ello, es el Departamento de Hacienda quien viene obligado a resarcir a los demandantes. Por tanto, concluye que sus intereses podrían verse afectados y que por consiguiente, debe incluirse como parte indispensable en el pleito, o, en su defecto, que procede incluirlo como un tercero demandado. Examinemos estas contenciones.

A

Luego de examinar la normativa expuesta es forzoso concluir que en este caso no se configuran los elementos necesarios para sostener que el Departamento de Hacienda es una parte indispensable en los litigios aquí consolidados. Como vimos, el análisis que se realiza para hacer este tipo de determinación se centra en auscultar si los intereses de ese tercero ausente se verían afectados por la determinación que tome el tribunal en el pleito del

---

[17] Arguyen que el Departamento de Hacienda fue negligente en la contratación de los seguros para tratar y cubrir los riesgos de los municipios y en la administración y supervisión del fondo común agregado, y que tampoco fiscalizó adecuadamente las acciones de Admiral ni tomó medidas preventivas ante el agotamiento del fondo.

cual está ausente. Ciertamente, ese no es el caso que tenemos aquí presente. Nos explicamos.

Recuérdese que la reclamación principal de estos pleitos es una de daños y perjuicios por la alegada negligencia del municipio de Bayamón en mantener seguras para el público ciertas áreas bajo su jurisdicción, conforme al Art. 1802 del Código Civil de Puerto Rico, 31 LPRA sec. 5141. En ese sentido, el Departamento de Hacienda no tiene obligación alguna en cuanto al cumplimiento de ese deber del Municipio. Es decir, lo que tiene que determinar el Tribunal de Primera Instancia es si el municipio de Bayamón actuó negligentemente, por acción u omisión, en el cumplimiento de ese deber y si ello fue la causa de los alegados daños de los demandantes. Por lo tanto, la responsabilidad, si alguna, que pueda tener el Municipio para con estos, no depende de la situación particular que tenga esa parte con determinada compañía aseguradora o con el Estado respecto a su cubierta de seguro por responsabilidad pública.

Como vemos, el foro primario puede adjudicar la responsabilidad del Municipio conforme al Art. 1802 del Código Civil, sin la necesidad de que el Departamento de Hacienda comparezca. Por lo tanto, en estos casos, tal agencia no se está exponiendo a una sentencia adversa y perjudicial a sus intereses en lo que respecta a la reclamación extracontractual de los demandantes. Mucho menos se violentaría su derecho a un debido proceso de

ley. Consecuentemente, resolvemos que no se configuran los elementos necesarios para catalogar al Departamento de Hacienda como una parte indispensable en estos casos.

B

Según explicamos, es errado en derecho concluir que el Departamento de Hacienda es una parte indispensable. Ahora bien, en sus petitorios, el Municipio de Bayamón también solicita que evaluemos si procede traer a esa agencia a los pleitos como un tercero demandado. Analicemos esa vertiente.

Como regla general, el objetivo final de una demanda contra tercero es facilitar la resolución pronta y económica de pleitos múltiples que puedan surgir de unos mismos hechos. S.L.G. Szendrey v. Hospicare, Inc., 158 DPR 648, 653 (2003), Gen. Accid. Ins. Co. P.R. v. Ramos, 148 DPR 523 (1999); Camaleglo v. Dorado Wings, Inc., 118 DPR 20, 28 (1986). Por ello, hemos dicho que esta acción no crea, extiende o limita derechos sustantivos, sino que acelera su dilucidación. S.L.G. Szendrey v. Hospicare, Inc., supra, págs. 653-654. Para lograr esto, esta regla se debe interpretar liberalmente. Camaleglo v. Dorado Wings, Inc., supra, pág. 28.

Evidentemente, esa liberalidad con la que se debe interpretar esta disposición se justifica por los valores procesales que entrañan las propias Reglas de Procedimiento Civil. En Neptune Packing Corp. v. Wackenhut Corp., 120 DPR 283, 288 (1988), expresamos que:

> [l]as Reglas de Procedimiento Civil se inspiran
> armoniosamente en tres valores fundamentales de
> justicia, rapidez y economía, enmarcados en la
> norma de buena fe que debe permear la
> tramitación de toda causa de acción. Para que
> ello se logre se requiere un enfoque integral,
> pragmático y creativo de nuestro ordenamiento
> procesal y sustantivo que con voluntad,
> sinceridad y acción, le dé vida a dichos valores
> y los convierta en vivencias y realidades
> cotidianas, atendiendo así las altas
> expectativas de nuestro contorno social.

De la misma forma, hemos reiterado la importancia de que los pleitos se adjudiquen en sus méritos. Id., pág. 294. Dicho reconocimiento toma mayor importancia cuando nos encontramos ante una alegación contra un tercero, que se convierte en el mecanismo procesal idóneo para evitar la multiplicidad de pleitos y resolver aquellas controversias que merecen una atención consolidada. Dentro de este marco conceptual, examinemos la normativa que rige este mecanismo en nuestro ordenamiento procesal.

La derogada Regla 12.1 de Procedimiento Civil de 1979, 32 LPRA Ap. III, establecía que en cualquier momento luego de que iniciara el pleito, el demandado podía, como demandante contra tercero, notificarle un emplazamiento y demanda a una persona que no fuera parte en el pleito, en cualquiera de los siguientes supuestos:

> (1) que [fuera] o pu[diera] serle responsable
> al demandado por toda o parte de la reclamación
> del demandante, o (2) que [fuera] o pu[diera]
> serle responsable exclusivamente al demandante.[18]

---

[18] Al adoptarse en Puerto Rico las Reglas de Procedimiento Civil de 1958, se incorporó en esta Regla el texto enmendado de su contraparte en las Reglas de Procedimiento Civil Federal, la Regla 14(a). Con ello el demandado podía traer al pleito a un tercero demandado únicamente para que le respondiera de lo que él (el tercero demandante) tuviera

Vemos que según estaba redactada esta Regla, se reconocía que una demanda contra tercero procedía únicamente ante la eventualidad de que: el tercero demandado tuviera que responderle al demandado por la reclamación del demandante original o, el tercero demandado le tuviera que responder exclusivamente al demandante original. Véase, Informe del Comité Asesor Permanente de Reglas de Procedimiento Civil de 2007, pág. 169. Es decir, la presunta responsabilidad del tercero ausente estaba cimentada en que este tuviera que responder por lo que reclamaba el demandante original, ya fuera directa o indirectamente.

Ahora bien, el lenguaje de la Regla 12.1 de Procedimiento Civil de 1979 se enmendó en el 2009 a los fines de cambiar esa situación jurídica. Ahora, esta disposición preceptúa:

> La parte demandada podrá notificar, como demandante contra tercero, un emplazamiento y demanda a una persona que no sea parte en el pleito y que sea o pueda ser responsable a la parte demandada por la totalidad o parte de la reclamación de la parte demandante, **o que sea o pueda ser responsable a cualquier parte en el pleito**. (Énfasis nuestro). 32 LPRA Ap. V.

Es un hecho que ya no existe la limitación en cuanto a que el tercero intervenga cuando "pueda serle

---

que responder al demandante original. El propósito era evitar que un demandado trajera como tercero demandado a un residente del lugar del demandante original, para derrotar la jurisdicción por diversidad de ciudadanía. Como en Puerto Rico no existe ese problema, en 1979 se enmendó esa disposición para permitir que el demandado, como demandante contra tercero, pudiera traer al pleito a un tercero para que le respondiera directamente al demandante. Véase, J.A. Cuevas Segarra, Tratado de derecho procesal civil, 2da Ed., San Juan, Publicaciones JTS, 2011, págs. 575-577.

responsable únicamente al demandante". Véase, Cuevas Segarra, op. cit. pág. 579. En cuanto a esto, en el Informe del Comité Asesor Permanente de las Reglas de Procedimiento Civil se mencionó lo siguiente:

> Es preciso señalar que bajo la Regla 12.1 de 1979 podía presentarse demanda contra tercero contra aquella persona que podía serle responsable exclusivamente al demandante. Sin embargo, la enmienda permite que pueda presentarse demanda contra tercero contra aquella persona que pueda serle responsable a cualquier parte en el pleito. Informe de las Reglas de Procedimiento Civil, 2007, pág. 169.

De esta forma, ya no es necesario que la reclamación que se haga contra el tercero sea en virtud de alguna responsabilidad que ese tercero tenga para con el demandante original. El Profesor Hernández Colón nos explica que mediante este procedimiento un demandado puede traer al pleito a un tercero para que le sea responsable a él o a cualquier parte en el pleito por lo que se le reclama en la demanda. R. Hernández Colón, Práctica Jurídica de Puerto Rico, 5ta Ed., San Juan, Lexis Nexis, 2010, pág. 168. Ahora bien, la procedencia de esa alegación también debe enmarcarse dentro de otras consideraciones. Veamos.

En el pasado dijimos que este tipo de alegación procede solo cuando "la responsabilidad de este (el tercero) dependa en alguna forma del resultado de la acción principal o cuando el tercero le es secundaria o directamente responsable al demandante [o a cualquier parte en el pleito]". Camaleglo v. Dorado Wings, Inc.,

supra, pág. 30. Nótese que el hecho de que estos requisitos se hayan planteado en la alternativa no implica que en efecto operen de esa manera. Como discutimos, bajo la Regla 12.1 de Procedimiento Civil de 1979, supra, se requería que ese tercero le fuera directa o secundariamente responsable a la parte demandante. Por lo tanto, era un requisito que ineludiblemente debía cumplir ese tipo de solicitud. Explicado esto, vemos que existe un requisito de que esa reclamación contra el tercero dependa, es decir, que sea contingente al resultado de la acción principal.

Por otro lado, también hemos hecho referencia a que debe existir un "entronque común" entre la demanda original y la reclamación que se presenta contra el tercero demandado. Véase; Camaleglo v. Dorado Wings, Inc., supra, pág. 30. Como dijimos, uno de los propósitos de la demanda contra tercero es evitar pleitos múltiples que puedan surgir *de unos mismos hechos*. Por lo tanto, este es uno de los parámetros a evaluar al momento de decidir si este tipo de demanda procede o no en un caso particular. Esto, pues a pesar de la liberalidad con la cual se debe interpretar, la regla no puede utilizarse para acumular en una acción controversias dispares por el mero hecho de que posean alguna relación común. Gen. Accid. Ins. Co. P.R. v. Ramos, supra, pág. 534.

A pesar de que en ocasiones anteriores hemos acogido este término de "entronque común", no lo hemos definido categóricamente. Por el contrario, hemos analizado si existe ese tipo de relación de acuerdo a las circunstancias particulares de cada caso. Así por ejemplo, en Camaleglo v. Dorado Wings, Inc., supra, atendimos una controversia que se desató entre Camaleglo Corporation, quien mediante un arrendamiento financiero le arrendó a Dorado Wings, Inc. un equipo telefónico. El inciso cuarto de ese contrato disponía que la arrendadora financiera no asumiría responsabilidad por desperfectos del equipo, esto, sin perjuicio de las garantías que le correspondieran a la arrendadora frente al fabricante. Trascendió que Dorado Wings se negó a pagar los cánones de arrendamiento debido a desperfectos en los aparatos telefónicos. Ante ello, la corporación Camaleglo demandó a esa parte reclamando el pago de la renta. Más adelante, la parte demandada Dorado Wings, solicitó presentar una demanda contra tercero en contra de Ochoa Telecom, Inc., vendedora del equipo arrendado. Al resolver sobre la procedencia de esa solicitud resolvimos que:

> En el caso de autos las reclamaciones tanto de la demanda como de la demanda contra tercero *tienen un entronque común*: el inciso cuarto del contrato de arrendamiento financiero. En su acción la arrendadora financiera Camaleglo solicitaba el cumplimiento específico de la cláusula del inciso cuarto que la relevaba de toda responsabilidad relativa al mal funcionamiento del equipo telefónico y obligaba a la arrendataria Dorado al pago de los cánones de arrendamiento a pesar de que existiera alguna

reclamación sobre el mal funcionamiento del equipo arrendado. La acción de la codemandada Dorado contra la tercera demandada Ochoa también emana del inciso cuarto del contrato de arrendamiento financiero, la subrogación pactada que le permite a la codemandada arrendataria Dorado traer contra la tercera demandada suplidora Ochoa las acciones y reclamaciones que por vicios ocultos le correspondían a la demandante arrendadora Camaleglo. (Énfasis en el original) Camaleglo v. Dorado Wings, Inc., supra, pág. 30.

Vemos, que el entronque común al que hicimos referencia en ese caso era el contenido del inciso cuarto del contrato de arrendamiento financiero. Es decir, uno de los elementos en que se fundamentó la demanda original, y no la demanda original en sí. Esa cláusula cuarta, por una parte, exigía que Dorado Wings efectuara el pago de los cánones de arrendamiento independientemente de lo que ocurriera con el equipo y por otro lado, permitía que se le reclamara al fabricante o suplidor del equipo el mal funcionamiento del mismo. Resolvimos pues, que el entronque común que existía entre la reclamación original y la que se presentó contra el tercero fue la base en las que se cimentó la causa de acción en cobro de dinero: la disposición cuarta del contrato de arrendamiento.

Por el contrario, en Gen. Accid. Ins. Co. P.R. v. Ramos, supra, resolvimos que no existía un entronque común entre la demanda original y la reclamación que se pretendía presentar contra el tercero demandado en ese caso. Allí, la aseguradora General Accident expidió una póliza *double interest* para cubrir los daños al vehículo

de la señora Quiñones López, la cual no incluía un seguro

de responsabilidad pública. Tras ocurrir un accidente de

tránsito con dicho automóvil, la aseguradora le rembolsó a

Quiñones López una suma por los daños de este.

Eventualmente, dicha compañía, al amparo de la cláusula de

subrogación del contrato, presentó una demanda en cobro de

dinero contra el señor Ramos Díaz, quien presuntamente

causó el accidente. En ese pleito de subrogación, el señor

Ramos Díaz presentó una demanda contra tercero en contra

de la señora Quiñones López por daños y perjuicios, para

reclamarle por los daños que él sufrió en el accidente. Al

atender un planteamiento sobre la procedencia o

improcedencia de esa demanda resolvimos que:

> …en el caso de autos *las reclamaciones de la demanda y de la demanda contra tercero no tenían un* entronque *común*. Eran dos reclamaciones jurídicamente distintas. La demanda original iba dirigida a obtener de Ramos Díaz el reembolso de lo que la compañía aseguradora le había indemnizado a Quiñones López por las pérdidas de su automóvil. Era una acción en cobro de dinero. En cambio, la reclamación medular de Ramos Díaz en su demanda contra tercero al amparo de la Regla 12.1 de Procedimiento Civil, *supra*, era una acción torticera sobre los daños que alegadamente Quiñones López le había ocasionado al vehículo de Ramos Díaz a raíz del accidente de tránsito ocurrido en julio de 1995 (Énfasis en el original). <u>Gen. Accid. Ins. Co. P.R. v. Ramos</u>, supra, pág. 536.

Ante ello, concluimos que era evidente que lejos de

ser una demanda contra tercero, "la reclamación de Ramos

Díaz contra Quiñones López era realmente una acción

separada y distinta" Id. En este caso, no hubo un

entronque común entre la demanda original de subrogación y

la reclamación contra el tercero, que era una acción por daños y perjuicios.

Como vemos, ese requisito de "entronque común" que debe compartir una demanda original y una demanda contra tercero no se ha definido de manera categórica. Más bien, nos hemos limitado a evaluar si existe ese elemento sin la necesidad de establecer parámetros específicos en cuanto a este. Esta situación ha traído un poco de confusión. Sin embargo, como veremos, este llamado "entronque común" a lo que se refiere es al hecho de que exista una relación entre la acción original y la alegación que se presenta contra el tercero, claro está, tomando en cuenta los pronunciamientos jurisprudenciales que se han hilvanado en cuanto a este mecanismo. Veamos.

De acuerdo al Diccionario de la Real Academia Española, una de las acepciones de la palabra entroncar es "establecer o reconocer una relación o dependencia de alguien o de algo con otra persona o cosa".[19] En otras palabras, lo que se debe examinar referente a este requisito de "entronque común" no es otra cosa que evaluar si existe una relación entre la demanda original y la reclamación que se pretende presentar contra el tercero demandado. Ahora bien, esta relación debe ser lo suficientemente estrecha como para no caer en la

---

[19] Diccionario de la Real Academia Española. Disponible en: http://lema.rae.es/drae/?val=entroncar. (Última visita en 2 de marzo de 2015).

prohibición que ya explicamos, en cuanto que no se deben acumular en un mismo pleito -mediante la demanda contra tercero- controversias dispares por el mero hecho de que tengan alguna relación en común. Por lo tanto, estas serán consideraciones que el tribunal deberá sopesar de acuerdo a las circunstancias particulares de cada caso, tomando en cuenta además, la liberalidad con la cual se debe interpretar la Regla 12.1 de Procedimiento Civil, supra. Así se deduce de la jurisprudencia previamente discutida.

Por un lado, en Camaleglo v. Dorado Wings, Inc., supra, resolvimos que una cláusula contractual constituía una relación suficientemente estrecha, es decir, era el "entronque común", entre la reclamación original y la alegación que se presentó contra el tercero demandado. Allí, ambas reclamaciones surgían de esa disposición del contrato de arrendamiento, que trataba sobre los desperfectos que pudiera sufrir el equipo telefónico arrendado. Por otro lado, las controversias planteadas en Gen. Accid. Ins. Co. P.R. v. Ramos, supra, no estaban lo suficientemente relacionadas como para que pudiéramos concluir que existía un entronque común entre ambas. Allí, a pesar de que el accidente de tránsito ocurrido fue lo que motivó tanto la demanda original como la demanda contra tercero, concluimos que ambas reclamaciones -la primera, una demanda de subrogación y la segunda, una demanda por daños y perjuicios- eran dos reclamaciones separadas y distintas. Lo que implica que, en todo caso,

habrá que evaluar la conveniencia procesal de dilucidar en conjunto los diferentes pleitos que puedan surgir de unos mismos hechos.

En atención a la normativa discutida, analicemos si bajo las circunstancias particulares de este caso procede incluir al Departamento de Hacienda como un tercero demandado.

### III

Como hemos expuesto, el Municipio de Bayamón apoya su petición de traer al Departamento de Hacienda coo tercero demandado en el supuesto de que este debe ser quien le responda directamente a los demandantes en cuanto a las acciones de daños. Nos vemos precisados a rechazar tal premisa por ser errada. Más aun, cuando de las alegaciones que se derivan de las reclamaciones de daños y perjuicios contra el peticionario no se observa indicio alguno por el cual el Departamento de Hacienda deba responder a los demandantes.

Ahora bien, como observamos, la Regla 12.1 de Procedimiento Civil, supra, prescribe que un demandante contra tercero, en este caso, el Municipio de Bayamón, puede presentar una demanda contra una tercera persona que pueda serle responsable a cualquier parte en el pleito. En otras palabras, podría traer al Departamento de Hacienda como tercero demandado para que le responda por lo que se reclama en las demandas en su contra. De acuerdo a la norma jurisprudencial discutida, esto procedería: (1) si

la reclamación que haga contra esa agencia tiene un entronque común con las demandas por daños y perjuicios que presentaron los demandantes contra el municipio y (2) si la reclamación depende del resultado de esas demandas. Examinemos estos parámetros.

En primer lugar, debemos analizar si existe alguna relación de origen o conexión entre las reclamaciones de los demandantes y la reclamación del Municipio de Bayamón contra el Departamento de Hacienda. Los demandantes de estos casos le han reclamado al Municipio de Bayamón una indemnización por alegados daños sufridos como resultado de acciones negligentes. El hecho de que el municipio haya quedado desprovisto de un seguro de ninguna manera implica que no tiene la obligación de satisfacer la sentencia, si alguna, que en su día recaiga. Como hemos afirmado, el peticionario es el único responsable frente a los demandantes de acuerdo a las alegaciones formuladas en las demandas. Ahora bien, son precisamente esas acciones de daños y perjuicios el entronque común que existe entre las demandas originales y la reclamación contra tercero que hace el Municipio de Bayamón. Veamos.

El peticionario presentó su reclamación contra el Departamento de Hacienda al amparo del Art. 12.020(3) del Código de Seguros de Puerto Rico, supra, y del Art. 8.011 de la Ley de Municipios Autónomos, supra. Disposiciones que establecen que el Secretario del Departamento de Hacienda actuará en representación de los municipios en

todo lo relacionado con la protección de sus activos contra pérdidas resultantes de los riesgos puros, tales como las reclamaciones por responsabilidad civil extracontractual. En parte, el Art. 8.011 citado establece:

> Los municipios tendrán la obligación de proteger sus activos y recursos contra **todo tipo de pérdida financiera resultante de las contingencias o riesgos mencionados en el inciso (c) de esta sección.**
>
> […]
>
> (c) **Los mecanismos para tratar riesgo que disponga el Secretario de Hacienda deberán proveer, según éste lo determine, protección a los municipios contra todo riesgo puro.** Se entenderá por riesgos puros aquellos que puedan causar al municipio una pérdida financiera pero no una ganancia, incluyendo:
>
> […]
>
> (3) Pérdidas por todo tipo de reclamación **por daños y perjuicios**… (Énfasis nuestro).

Es evidente que las reclamaciones de daños de los demandantes podrían provocar una pérdida financiera al Municipio de Bayamón. Y esa pérdida financiera, de ocurrir, es la base de la reclamación del peticionario contra el Departamento de Hacienda. Por consiguiente, existe una relación o entronque común entre las demandas originales de daños y perjuicios y la reclamación del Municipio contra del Departamento de Hacienda. Así también, esta reclamación contra tercero que hace el Municipio de Bayamón es contingente al resultado de las referidas demandas de daños. Veamos.

La doctrina que interpreta la Regla 14(a) de Procedimiento Civil federal, de la cual proviene la

nuestra[20], sugiere que la demanda contra tercero tiene sus bases en un intento del demandado original de *transferir* la responsabilidad que le ha sido reclamada. Véase, Wright, Miller and Kane, Federal practice and procedure, Sec. 1446 (2010).[21] A estos fines, los tratadistas de esa jurisdicción han afirmado lo siguiente:

> The words "may be liable" mean that defendant is permitted to join someone against whom a cause of action has not yet accrued, provided that the claim is contingent upon the success of plaintiff's action and will accrue when defendant's liability is determined in the main action or plaintiff's claim is satisfied. (Citas omitidas). Wright, Miller and Kane, op. cit., Sec. 1451.

En estos casos, la reclamación del Municipio de Bayamón contra el Departamento de Hacienda ciertamente depende del resultado de las demandas originales de daños y perjuicios. El peticionario tenía a su haber un mecanismo provisto por el programa de seguros que el Secretario de Hacienda contrató a nombre de todos los municipios de Puerto Rico para responder por las mismas. Empero, ante la cancelación de dicha póliza de seguro, el Municipio de Bayamón alega que está expuesto a sufrir un daño en la eventualidad de que el Tribunal de Primera Instancia declare ha lugar las demandas por daños y perjuicios que se presentaron en su contra. Es evidente que el daño consistiría en que al no tener cubierta contra

---

[20] Véase, esc. 18, supra.

[21] Citando a Power Corp. v. Dick Corp., 299 F. Supp. 2d 242, 248 (S.D. N.Y. 2004).

reclamaciones de esa naturaleza, se vería precisado a pagar una indemnización a favor de los demandantes de sus propios activos. El peticionario atribuye ese daño a la alegada negligencia del Departamento de Hacienda, consistente en no cumplir con su deber ministerial en cuanto a los seguros de los municipios. Es decir, el daño que está expuesto a sufrir el municipio está supeditado al resultado de los pleitos por daños y perjuicios que en su día serán adjudicados por el foro primario.

Por último, es importante recalcar la necesidad de que se acumule la reclamación del municipio contra el Departamento de Hacienda mediante el mecanismo de demanda contra tercero. Como mencionamos al inicio, este tipo de procedimiento permite que se diluciden en un mismo pleito controversias relacionadas entre sí y de este modo se contribuye a la economía procesal. En estos casos, el peticionario contiende que el hecho de que sea él quien tenga que pagar la compensación que en su día, si alguna, dicte el Tribunal de Primera Instancia a favor de los demandantes, exige que Hacienda sea traída como parte en el pleito. Esto ante la alegación de que ello tendría un impacto sobre las finanzas del municipio por tener que desembolsar una suma no presupuestada ante el entendido de que sería la compañía aseguradora quien cubriría ese tipo de gastos. Al incluir al Departamento de Hacienda como tercero demandado, se finiquita esa controversia en el mismo pleito en que se determinará si el municipio fue

negligente. En caso de que el foro primario determine que el Departamento de Hacienda fue negligente con el municipio, sería este tercero quien responderá por las reclamaciones de los demandantes. Esto, no porque tenga responsabilidad directa con ellos, sino por la responsabilidad que tendría para con el demandante contra tercero (el municipio) por lo que se le reclamó a este en las demandas originales.

IV

Por los fundamentos que anteceden, resolvemos que erró el Tribunal de Apelaciones al determinar que el Departamento de Hacienda es una parte indispensable en estos pleitos. Por otro lado, colegimos que el mecanismo procesal que procede para traer a dicha agencia a estos pleitos es la Regla 12.1 de Procedimiento Civil, supra, que regula la demanda contra tercero. En estos casos no hay duda de que están presentes los requisitos necesarios para que el Departamento de Hacienda pueda incluirse en estos pleitos como un tercero demandado.

Se dictará sentencia de conformidad.


Edgardo Rivera García
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Christian Colón Negrón; María Negrón Santiago<br>Recurrida<br><br>v.<br><br>Municipio de Bayamón y compañía aseguradora Admiral Insurance Company<br>Peticionarios<br><br>----------------<br>Mariel Pérez Santiago<br>Recurrida<br><br>v.<br><br>Municipio de Bayamón por conducto de su Hon. Alcalde Ramón Luis Rivera, hijo; Admiral Insurance Company, Fulano de Tal<br>Peticionarios<br><br>----------------<br>María Maldonado Roche<br>Parte Demandante<br><br>v.<br><br>Municipio de Bayamón, representado por su Alcalde, Hon. Ramón Luis Rivera Cruz<br>Parte Demandada-Peticionaria<br><br>Estado Libre Asociado de Puerto Rico<br>Parte Demandada-Recurrida<br><br>Personas de nombres desconocidos B & C; Compañías Aseguradoras 2, 3 & 4 | CC-2013-0400<br><br><br><br>Consolidado con:<br><br><br><br><br>CC-2013-0500<br><br><br><br><br>CC-2013-0605 |

SENTENCIA

San Juan, Puerto Rico, a 10 de marzo de 2015.

Por los fundamentos antes expuestos, resolvemos que erró el Tribunal de Apelaciones al determinar que el Departamento de Hacienda es parte indispensable en los recursos de epígrafe. Colegimos que la demanda contra tercero, regulada por la Regla 12.1 de Procedimiento Civil, 32 L.P.R.A. Ap. V, es el mecanismo que procede para traer a la referida agencia en estos pleitos. En estos casos, no hay duda de que están presentes los requisitos necesarios para que el Departamento de Hacienda pueda incluirse en estos pleitos como un tercero demandado.

Así lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez no intervino.


Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo