Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| JI SITE DEVELOPERS, LLC<br><br>Peticionario<br><br>v.<br><br>UNIVERSIDAD DE PUERTO RICO EN CAROLINA y otros<br><br>Recurridos | KLCE202400157 | *CERTIORARI*<br>Procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Civil Núm.: CA2021CV01413 (402)<br><br>Sobre: Entredicho Provisional; Interdicto Preliminar; Interdicto Permanente; y Sentencia Declaratoria |
|---|---|---|

Panel integrado por su presidente, el Juez Hernández Sánchez, la Jueza Santiago Calderón y la Jueza Álvarez Esnard.

Álvarez Esnard, Jueza Ponente

## **RESOLUCIÓN**

En San Juan, Puerto Rico, a 15 de marzo de 2024.

Comparece ante nos JI Site Developers, LLC ("JI Site" o "Peticionaria") mediante *Recurso de certiorari* presentado el 7 de febrero de 2024. Nos solicita que revoquemos la *Resolución* emitida y notificada el 8 de diciembre de 2023, por el Tribunal de Primera Instancia, Sala Superior de Carolina ("foro *a quo*" o "foro primario"). Mediante el referido dictamen, el foro *a quo* declaró *No Ha Lugar* la *Moción de Relevo de Sentencia por Nulidad al Haberse Dictado en Ausencia de Partes Indispensable* presentada por la Universidad de Puerto Rico en Carolina ("UPR Carolina"), el señor Jorge Haddock Acevedo y el señor José I. Meza Pereira (en conjunto, "los Recurridos").

Número Identificador

SEN(RES)2024_____

Por los fundamentos expuestos a continuación, **denegamos** la expedición del auto de *certiorari.*

**I.**

El 8 de junio de 2021, JI Site presentó una *Demanda[1]* sobre entredicho provisional, interdicto provisional, interdicto permanente y sentencia declaratoria contra la UPR Carolina, el señor José I. Meza Pereira ("Rector Meza Pereira"), por sí y en su carácter de Rector de la UPR Carolina y el señor Jorge Haddock Acevedo, en su carácter personal y como Presidente de la Universidad de Puerto Rico.

En dicha *Demanda,* alegó que el 4 de octubre de 2018, suscribió un *Contrato de Arrendamiento de Predio de Terreno[2]* con la UPR de Carolina. Mediante el aludido acuerdo, arrendó una porción de terreno para la instalación de una antena de telecomunicaciones, por un término de cinco (5) años, el cual se renovaría automáticamente por tres (3) periodos de cinco (5) años. No empece a lo antes expuesto, el 12 de febrero de 2021, JI Site recibió un correo electrónico del Rector Meza Pereira, en cual incluía una carta notificándole que el contrato suscrito entre las partes había sido cancelado. En esta comunicación, el entonces Rector Meza Pereira le informó que la división legal de la Universidad de Puerto Rico había determinado que el contrato era nulo, toda vez que no se cumplieron con los requisitos dispuestos en Ley para la contratación gubernamental. En vista de tal acción, JI Site argumentó que las acciones de la Universidad de Puerto Rico fueron *ultra vires,* por cancelar arbitraria y caprichosamente un contrato sin justa causa, sino que, además,

---

[1] Apéndice *certiorari*, págs. 1-21.
[2] *Íd,* págs. 23-31.

se les impidió el acceso a las facilidades para poder dar manteniendo a los equipos.

Por tales razones, solicitaron que se emitiera un interdicto preliminar y permanente, en el que obligara a los Recurridos a brindar acceso a las compañías de telecomunicaciones CLARO y TMOBILE, al predio donde ubica la antena para que pudiesen realizar las tareas de mantenimiento en los equipos que allí ubican, instalar un generador que es requerido y poder cumplir con las obligaciones exigidas por las agencias reguladoras, hasta tanto se dilucide la controversia en cuestión. Asimismo, solicitaron una sentencia declaratoria que ratificara el contrato de arrendamiento objeto de esta controversia y que se impidiera su quebrantamiento. Solicitaron, además, las costas, gastos y honorarios de abogado.

Luego de varios trámites procesales, el 6 de agosto de 2021, los Recurridos presentaron una *Moción de Desestimación.*[3] Mediante esta, solicitaron la desestimación de la reclamación al amparo de la Regla 10.2 (5) de Procedimiento Civil, 32 LPRA Ap. V, R.10.2 (5), por dejar de exponer una reclamación que justifique un remedio. En particular, expusieron que el contrato suscrito en el año 2018 era nulo, puesto que incumplía con la Certificación Número 108 de la Junta de Gobierno de la UPR, la cual establecía que cualquier contrato que tenga el efecto de privar a la UPR del uso y disfrute de su propiedad por seis (6) años o más, deberá obtener la recomendación del Presidente de la UPR y la aprobación de la Junta de Gobierno. Además, señalaron que el contrato incumple el *Reglamento de Control de la Propiedad de la UPR*, puesto que no se había celebrado una subasta pública.

---

[3] *Íd,* págs. 83-89.

Añadieron que el contrato adolecía de irregularidades, toda vez que no se cumplieron con todos los requisitos que dispone el Artículo 3.3 del *Código Anticorrupción para el Nuevo Puerto Rico, Ley Núm. 2 de 4 de enero de 2018*, 3 LPRA sec. 1883b, ("Código Anticorrupción"), por dejar de incluir una declaración jurada sobre si alguna persona natural o jurídica ha sido convicto o declarado culpable de delito. Finalmente, sostuvieron que el contrato es nulo de su faz, por lo cual JI Site estaba impedida de reclamar haber sufrido algún agravio o el derecho de acceso a los predios de la UPR.

En respuesta, el 7 de septiembre de 2021, JI Site presentó su *Oposición a Desestimación*.[4] En primer lugar, señaló que la moción de desestimación era, en efecto, una solicitud de sentencia sumaria y no cumplía con los requisitos dispuestos en la Regla 36.3 de Procedimiento Civil, *supra,* R. 36. Por otro lado, indicó que el contrato de arrendamiento fue registrado en la Oficina del Contralor y que este cumplía con las disposiciones relativas a los contratos con el Gobierno. Asimismo, sostuvo que el contrato estaba relacionado a una propiedad con un valor menor de $600,000.00 y, por ende, podía ser firmado por el rector del UPR. Aclaró que para suscribir el contrato no se requería un proceso de subasta, y que la declaración jurada que requiere el Art. 3.3 del Código Anticorrupción, *supra,* no estaba incluida en el listado de documentos que requería la solicitud de arrendamiento. Por lo cual, arguyó que no procedía la desestimación de la demanda.

Evaluados los argumentos de las partes, el 3 de junio de 2022, notificada el 6 del mismo mes y año, el foro primario dictó

---

[4] *Íd,* págs. 116-150.

*Sentencia,* en la que declaró *Ha Lugar* la solicitud de desestimación presentada por los Recurridos. Concluyó el foro primario que JI Site incumplió con el Artículo 3.3 del *Código Anticorrupción, supra,* al no incluir la declaración jurada al momento de otorgar el contrato, el cual es un requisito indispensable para la contratación gubernamental. Fundamentó que la presentación de la declaración jurada posterior a la otorgación del contrato era contrario al propósito que persigue el Código Anticorrupción, *supra,* de prevenir conductas y actos que puedan perjudicar la integridad de nuestro sistema de gobierno. En virtud de lo anterior, concluyó que el contrato no cumplía con las leyes de contratación gubernamental y, en consecuencia, era nulo.

Inconforme con tal determinación y luego de transcurridos varios trámites ante el foro primario, el 17 de agosto de 2022, JI Site compareció ante esta Curia mediante recurso de apelación (KLAN202200656). Por virtud de la *Sentencia* emitida el 28 de septiembre de 2022, notificada al próximo día, este panel confirmó el dictamen emitido por el foro primario, en el que se decretó la nulidad del contrato.[5]

Insatisfecha aún, la parte Peticionaria recurrió mediante *certiorari* ante el Tribunal Supremo de Puerto Rico (CC-2022-0789), el cual denegó la expedición del recurso el 3 de febrero de 2023. Así las cosas, la Peticionaria presentó escrito de reconsideración, el cual fue denegado mediante *Resolución* del 24 de marzo de 2023. Posterior a ello, la Peticionaria presentó un segundo escrito de reconsideración, que al igual fue denegado el 19 de mayo de 2023.[6]

---

[5] *Íd,* págs. 219-235.
[6] Apéndice *Memorando en Oposición a Expedición de Certiorari,* págs. 2-4.

Así las cosas, el 2 de noviembre de 2023, la Peticionaria presentó ante el foro primario un escrito intitulado *Moción de Relevo de Sentencia por Nulidad por Haberse Dictado en Ausencia de Partes Indispensable*.[7] Mediante este, argumentó que procedía el relevo de la *Sentencia* dictada por el foro primario el 3 de junio de 2022, puesto que era nula por dejar de acumular partes indispensables en el pleito. Particularmente, esbozó que las compañías de telecomunicaciones Claro y T-Mobile, eran partes indispensables en el pleito, ya que estas habían otorgado contratos de subarrendamiento con JI Site para el uso de la antena de telecomunicaciones. Por tanto, solicitaron que se incluyera en el pleito a dichas compañías y se dejara sin efecto la *Sentencia* emitida el 3 de junio de 2022.

Por su parte, el 4 de diciembre de 2023, los Recurridos presentaron su *Oposición a Moción de Relevo de Sentencia*.[8] Por virtud de esta, expusieron que las alegadas partes indispensables no formaron parte del contrato suscrito entre la UPR y JI Site, por lo que su acumulación en el pleito no variaría la adjudicación de la controversia. Argumentaron que cualquier subarrendamiento que JI Site hubiese podido realizar estaba supeditado a la validez del contrato entre estos y JI Site. Añadió que JI Site no opto por no incluirlos en el pleito y luego de dos años, no podía solicitar su acumulación. Por tanto, solicitaron que se denegara la solicitud de relevo de sentencia.

Evaluados los planteamientos esbozados por las partes, el 8 de diciembre de 2023, notificada el 12 del mismo mes y año, el foro primario emitió *Resolución* en la que declaró *No Ha Lugar* la

---

[7] Apéndice *certiorari*, págs. 238-242.
[8] *Íd*, págs. 243-246.

solicitud de relevo de sentencia sometida por la Peticionaria.[9] Oportunamente, JI Site presentó *Moción de Reconsideración,*[10] la cual fue declarada No Ha Lugar mediante *Resolución Reconsideración* emitida y notificada el 9 de enero de 2024.

Inconforme con el dictamen, el 7 de febrero de 2024, la Peticionaria acude ante esta Curia mediante recurso de *Recurso de Certiorari* y alega la comisión del siguiente error:

> EL TPI ERRÓ AL NO DECLARAR QUE LAS COMPAÑÍAS CLARO Y T-MOBILE ERAN PARTES INDISPENSABLES EN EL PLEITO Y AL NO RELEVAR LA SENTENCIA POR HABERSE DICTADO EN AUSENCIA DE ESTAS PARTES

El 12 de febrero de 2024, esta Curia emitió *Resolución* en la que, entre otros asuntos, le concedimos un término de diez (10) días a la parte Recurrida para que mostrara causa por la cual no debíamos expedir el auto de *certiorari* y revocar la determinación recurrida. En cumplimiento con lo ordenado, el 23 de febrero de 2024, los Recurridos presentaron su *Memorando en Oposición a Expedición de Certiorari.*

Con el beneficio de la comparecencia de ambas partes de epígrafe, procedemos a exponer la normativa jurídica aplicable al caso ante nuestra consideración.

## II.
### A. *Certiorari*

"[U]na resolución u orden interlocutoria, distinto a una sentencia, es revisable mediante *certiorari* ante el Tribunal de Apelaciones". *JMG Investment v. ELA et al.,* 203 DPR 708, 718 (2019). "El recurso de *certiorari* es un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un foro inferior". *800 Ponce de León v. AIG,* 205 DPR 163, 174 (2020). Véase, además, *Torres González v.*

---

[9] *Íd,* pág. 247.
[10] *Íd,* págs. 248-259.

*Zaragoza Meléndez,* 211 DPR 821 (2023). Los límites a la facultad revisora del foro apelativo tienen como propósito evitar la dilación que causaría la revisión judicial de controversias que pueden esperar a ser planteadas a través del recurso de apelación. *Scotiabank v. ZAF Corp. Et al.,* 202 DPR 478, 486-487 (2019).

No obstante, la discreción del tribunal apelativo en este aspecto no opera en un vacío ni sin parámetros. *Mun. De Caguas v. JRO Construction,* 201 DPR 703, 712 (2019). La Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, señala los criterios que se deben tomar en consideración al evaluar si procede expedir un auto de *certiorari.* Véase, además, *Banco Popular de Puerto Rico v. Gómez Alayón y otros,* 213 DPR __ (2023), 2023 TSPR 145, resuelto el 19 de diciembre de 2023. Estos criterios son:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

El Tribunal Supremo ha expresado que la discreción es "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *Mun. De Caguas v. JRO Construction, supra,* 8ágs.. 712-713.

### *B. Relevo de Sentencia*

La Regla 49.2 de Procedimiento Civil, 32 LPRA Ap. V, R.49.2, dispone que una parte puede solicitar que el tribunal la releve de los efectos de una sentencia. Lo anterior, procederá cuando ocurra alguna de las siguientes circunstancias excepcionales:

(a) error, inadvertencia, sorpresa o negligencia excusable;

(b) descubrimiento de evidencia esencial que, a pesar de una debida diligencia, no pudo haber sido descubierta a tiempo para solicitar un nuevo juicio de acuerdo con la Regla 48;

(c) fraude (incluso el que hasta ahora se ha denominado "intrínseco" y el también llamado "extrínseco"), falsa representación u otra conducta impropia de una parte adversa;

(d) nulidad de la sentencia;

(e) la sentencia ha sido satisfecha, renunciada o se ha cumplido con ella, o la sentencia anterior en que se fundaba ha sido revocada o de otro modo dejada sin efecto, o no sería equitativo que la sentencia continúe en vigor, o

(f) cualquier otra razón que justifique la concesión de un remedio contra los efectos de una sentencia.

Este mecanismo post sentencia, tiene el propósito de proveer un justo balance entre dos intereses conflictivos de nuestro ordenamiento jurídico. "Por un lado, se encuentra el principio de que todo caso se resuelva justamente, mientras que por otro lado se encuentra el interés de que los litigios concluyan." *HRS Erase v. CMT*, 205 DPR 689 (2020), citando a *García Colón et al. V. Sucn. González*, 178 DPR 527, 540 (2010). Por ello, el Tribunal Supremo ha reiterado que la Regla 49.2 de Procedimiento Civil*, supra,* debe "interpretarse liberalmente y cualquier duda debe resolverse a favor del que solicita que se deje sin efecto una anotación de rebeldía o una sentencia". *HRS Erase v. CMT, supra,* citando *Díaz v. Tribunal Superior*, 93 DPR 79, 87 (1966).

Ahora bien, es menester señalar que los tribunales tienen la discreción de sopesar estos factores y determinar si procede relevar a una parte de los efectos de una sentencia. *Íd*, citando a *Náter v. Ramos,* 162 DPR 616, 624 (2004). Además, el promovente de la solicitud de relevo de sentencia deberá presentarla "dentro de un término razonable, pero en ningún caso después de transcurridos seis (6) meses de haberse registrado la sentencia". Regla 49.2 de Procedimiento Civil, *supra*. No obstante, tales normas ceden cuando se trata de una sentencia que adolece de nulidad o cuando la sentencia ha sido satisfecha. *HRS Erase v. CMT*, *supra,* citando *Rivera v. Algarín,* 159 DPR 482, 490 (2003). Sin embargo, la consabida regla no constituye una llave maestra para reabrir controversias, ni sustituye los recursos de apelación o reconsideración. Es decir, el precepto no está disponible para alegar cuestiones sustantivas que debieron ser planteadas mediante los recursos de reconsideración y apelación. *García Colón et al. V. Sucn. González*, supra, pág. 541.

De otro lado, si una parte solicita el relevo de sentencia al amparado en el inciso (4) de la Regla 49.2 de Procedimiento Civil, *supra*, y demuestra que la sentencia es nula, el foro primario no tendrá discreción para denegar la misma. "[S]i una sentencia es nula, tiene que dejarse sin efecto independientemente de los méritos que pueda tener la defensa o la reclamación del perjudicado". *HRS Erase v. CMT*, *supra*, citando a *García Colón et al. V. Sucn. González, supra*, 10ágs.. 543-544. "[C]uando una sentencia es nula, se tiene por inexistente, por lo que no surte efecto alguno". *López García v. López García*, 200 DPR 50, 62 (2018). "[A]nte la certeza de nulidad de una sentencia, resulta mandatorio declarar su inexistencia

jurídica; ello independientemente del hecho de que la solicitud a tales efectos se haga con posterioridad a haber expirado el plazo de seis (6) meses". *HRS Erase v. CMT*, *supra,* citando a *Montañez v. Policía de P.R.,* 150 DPR 917 (2000). Así, que la parte promovente no está limitada por el término de seis (6) meses dispuesto en la Regla 49.2 de Procedimiento Civil.

De igual modo, se considera que una sentencia es nula cuando el tribunal actuó sin jurisdicción o cuando se quebrantó el debido proceso de ley de alguna de las partes. *HRS Erase v. CMT*, *supra,* citando a *García Colón et al. V. Sucn. González, supra,* pág. 543. Cuando se alega que la nulidad de la sentencia por alguna violación al debido proceso de ley, el profesor Rafael Hernández Colón señaló que el "[q]uebrantamiento del debido proceso de ley es un concepto mucho más amplio y pueden haber tantas manifestaciones del mismo como principios del debido proceso existen y que se hayan quebrantado en un caso en especial". R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil,* 5ta ed., San Juan, Ed. Lexis Nexis, 2010, sec. 4807, pág. 408. Así que, se ha resuelto que la ausencia de una parte indispensable es una violación al debido proceso de ley que conlleva obligatoriamente el relevo de la sentencia. *HRS Erase v. CMT*, *supra,* citando a *García Colón et al. V. Sucn. González, supra,* pág. 551.

### C. *Parte Indispensable*

La Regla 16.1 de Procedimiento Civil, 32 LPRA Ap. V. R. 16.1, regula la acumulación indispensable de partes. La precitada regla define partes indispensables como "las personas que tengan un interés común sin cuya presencia no pueda adjudicarse la

controversia, [quienes] se harán partes y se acumularan como demandantes o demandadas, según corresponda. *Íd.*

"Cabe señalar que el "interés común" al que se hace referencia en la citada Regla 16.1 [de Procedimiento Civil,] no es cualquier interés en el pleito, **sino que tiene que ser de tal orden que impida producir un decreto sin afectarlo".** *Romero v. S.L.G. Reyes*, 164 DPR 721, 734 (2005). (Énfasis nuestro). Asimismo, ese interés afectado "tiene que ser real e inmediato, al extremo de impedir que se elabore un decreto adecuado, ya que '[b]ajo la Regla 16.1 una parte indispensable es aquella persona cuyos derechos e intereses podrían quedar destruidos o *inevitablemente afectados* por una sentencia dictada, estando esta persona ausente del litigio'". *Íd,* citando a Cuevas Segarra, *Tratado de Derecho Procesal Civil*, San Juan, Pubs. JTS (2000), 12ágs.. 369-371. (Énfasis en original).

El Tribunal Supremo ha determinado que "la interpretación de esta regla se requiere un enfoque pragmático; es decir, una evaluación individual a la luz de las circunstancias particulares que se presenten y no de una fórmula rígida para determinar su aplicación". *Romero v. S.L.G. Reyes, supra,* pág. 732. El foro también estimó meritorio destacar que:

> **[l]a determinación final de si una parte debe o no acumularse depende de los hechos específicos de cada caso individual.** Exige una evaluación jurídica de factores, tales como tiempo, lugar, modo, alegaciones, prueba, clase de derechos, intereses en conflicto, resultado y formalidad. Cuando, en un pleito, las partes no se han tomado la iniciativa de brindar a terceros ausentes la oportunidad de salvaguardar unos derechos que pueden resultar afectados, estos terceros deben ser acumulados como parte para poder dar finalidad a la adjudicación de la controversia medular. No es suficiente que el ausente haya tenido la oportunidad de intervenir en el pleito, pues mientras no se le haya hecho parte, no se le puede privar de unos derechos mediante sentencia. *López García v. López García*, 200 DPR 50, 64-65 (2018).

A su vez, es meritorio establecer que nuestro Tribunal Supremo

ha enfatizado que:

> La falta de parte indispensable constituye un planteamiento tan relevante y vital que puede presentarse **en cualquier momento**, es decir, puede presentarse por primera vez en apelación e incluso puede suscitarse "sua sponte" por un tribunal apelativo ya que, **en ausencia de parte indispensable, el tribunal carece de jurisdicción**. Además, la omisión de traer a una parte indispensable al pleito constituye una violación al debido proceso de ley de dicho ausente. *Romero v. S.L.G. Reyes, supra,* pág. 733. (Énfasis suplido).

Una vez se determina que una persona es parte indispensable en un litigio y que está ausente en el pleito, la acción debe **ser desestimada sin perjuicio; es decir, que no tendrá el efecto de una adjudicación en los méritos con efecto de cosa juzgada**. *Colón Negrón et al. V. Mun. Bayamón,* 192 DPR 499, 511 (2015).

### III.

En el presente recurso, el Peticionario solicita que revoquemos la *Resolución* emitida por el foro primario, en la que denegó la solicitud de relevo de la *Sentencia* del 6 de junio de 2022. Argumenta que el foro inferior debió concluir que era imposible anular el contrato de arrendamiento sin afectar los derechos e intereses de Claro y T-Mobile otorgados al amparo de los contratos de subarrendamiento, por tanto, a ser estas compañías partes indispensables, la determinación de nulidad de contrato, es a su vez nula.

Por su parte, los Recurridos argumentan que el pleito versó sobre la validez del contrato entre UPR Carolina y JI, por lo que no estaban en controversia los contratos de subarrendamiento. Añadió que si la Peticionaria estimaba necesario la presencia de Claro y T-Mobile en el pleito, era su deber como demandante tramitar la acumulación de estas.

Expuesto el marco jurídico y ponderados los argumentos presentados por las partes, resolvemos que no se han producido las circunstancias que exijan nuestra intervención. No se configuran ninguna de las instancias contempladas en la Regla 52.1 de Procedimiento Civil, *supra.* A la luz de los criterios establecidos en la Regla 40 de este Tribunal, *supra,* que debemos evaluar, no encontramos justificación para intervenir.

Por lo tanto, la determinación recurrida constituye una decisión dentro del claro ejercicio de discreción conferido al foro primario y la parte Peticionaria no demostró que el foro primario actuó de forma arbitraria o caprichosa, ni se equivocó en la interpretación o aplicación de las normas procesales o de derecho al ejercer su poder discrecional de denegar la solicitud de relevo de sentencia, por lo que no se justifica nuestra intervención en este caso.

**IV.**

Por los fundamentos expuestos, **denegamos** la expedición del auto de *certiorari.*

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones