ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL V

| | | |
|---|---|---|
| ROSANA MORILLO SERRANO Y ROSANA ET ALS<br><br>Apelada<br><br>v.<br><br>LUIS SOTO MADURO ET ALS<br><br>Apelante | **KLAN202400983** | *Apelación* procedente del Tribunal de Primera Instancia Sala Superior de Arecibo<br><br>Civil Núm. C AC2014-0228<br><br>Sobre: Incumplimiento de Contrato, Fraude, Daños |

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

Bonilla Ortiz, Juez Ponente

## **SENTENCIA**

En San Juan, Puerto Rico, a 24 de febrero de 2025.

Comparece ante este foro, el Sr. Luis Soto Maduro (señor Soto o apelante) y nos solicita que revisemos dos dictámenes, a saber, una *Resolución* y una *Sentencia Enmendada*, ambas emitidas el 1 de octubre de 2024 y notificadas el 2 de octubre de 2024, por el Tribunal de Primera Instancia, Sala Superior de Arecibo. Mediante la *Resolución*, concluyó que la Sra. Ángela Galatzán (señora Galatzán) no era parte indispensable en el pleito, toda vez que su responsabilidad era subsidiaria. Respecto a la *Sentencia Enmendada*, decretó Ha Lugar la *Demanda* y No Ha Lugar a la *Reconvención*. En consecuencia, decretó nulo el negocio jurídico impugnado y ordenó al señor Soto el pago de distintas sumas de dinero.

Por los fundamentos que se exponen a continuación, **CONFIRMAMOS** los dictámenes apelados.

Número Identificador

SEN2024 _____

# I.

El 30 de octubre de 2013 la Sra. Rosa Morillo Serrano (señora Morillo) y la Sra. Rosana Montalvo (señora Montalvo), presentaron una *Demanda* sobre incumplimiento de contrato, fraude, y daños y perjuicios en contra del señor Soto, su esposa la señora Galatzán y la Sociedad Legal de Gananciales compuesta por ambos (SLG).[1] En esta, alegaron que la señora Morillo y la señora Montalvo fueron presidenta y vicepresidenta, respectivamente, de Jet Center Inc. Corporación (Jet Center). Indicaron que la referida corporación se dedicaba al manejo y operaciones de Jets privados en el aeropuerto Luis Muñoz Marín. No obstante, expresaron que para marzo del 2010 había terminado el contrato de Jet Center con la Autoridad de Puertos y, en consecuencia, esta cesó operaciones, por lo que causó que la señora Morilla y la señora Montalvo quedaran desempleadas.

Alegaron que el señor Soto al conocer de la situación laboral de las demandantes les hizo un acercamiento de empleo y negocio. Explicaron que, dicho acercamiento giró sobre el traspaso y cesión del cien por ciento de las acciones emitidas y en circulación de las corporaciones Plaza Tour, Inc. (Plaza Tour) y de Viajes Plaza, Inc. (Viajes Plaza). Sin embargo, indicaron que la señora Morillo le informó al apelante que no contaba con dinero para mantener las operaciones de ambas corporaciones, a lo cual el señor Soto le respondió que había dinero suficiente en las cuentas corporativas para seguir con las operaciones.

---

[1] *Demanda*, apéndice 9, págs. 59-63 del apéndice del recurso.

Alegaron, además que antes de firmarse el contrato para el traspaso de las acciones, la parte apelada trabajó en ambas corporaciones con el fin de familiarizarse, aprender y entender las operaciones diarias de Plaza Tours. A su vez, explicaron que la señora Morillo contrató a un auditor para que suministrara información sobre los asuntos financieros de ambas corporaciones. Manifestaron que dicho auditor les indicó que ambas corporaciones se encontraban aptas para ser traspasadas.

Así las cosas, sostuvieron que el 13 de julio de 2011 el señor Soto y la señora Morillo otorgaron los contratos de cesión de acciones de ambas corporaciones. No obstante, indicaron que la señora Morillo al entrar en posesión de ambas corporaciones se percató que el apelante retiró todo el dinero habido en las cuentas de las corporaciones. Explicaron que, la suma retirada ascendía a $200,000.00, y que ese dinero se iba a utilizar para cumplir con las deudas contraídas de las corporaciones y pagar las nóminas de los empleados. Además, enfatizaron que, la misma semana que se hizo el traspaso de ambas corporaciones rebotaron los cheques de nómina de los empleados por insuficiencia de fondos. Por tal razón, concluyeron que el apelante retiró intencionalmente todos los fondos de la compañía defraudando a las apeladas.

Indicaron que al contactar el señor Soto para exigir una explicación éste le respondió que no era su problema y que la señora Morillo se hacía responsable por haber aceptado ambas corporaciones. A tales efectos, indicaron que la señora Morillo pidió dinero prestado para sufragar gastos, deudas y obligaciones de ambas

corporaciones, pero resultó infructuoso. Como resultado, expresaron que la parte apelada estaba a punto de perder su residencia y que adeudaban $50,000.00 al arrendador de la propiedad donde operaban Viajes Plaza y Plaza Tour. Ante ello, solicitaron que el apelante restituya la suma de $200,000.00 a las corporaciones, reclamaron la partida de $106,324.00 que le fue prestado a la señora Morillo por terceros para satisfacer las obligaciones de las corporaciones. Además, la señora Morillo y la señora Montalvo solicitaron $500,000.00 por concepto de daños y angustias mentales, respectivamente.

El 7 de febrero de 2014, el señor Soto, la señora Galatzan y la SLG presentaron su *Contestación a Demanda*.[2] En su respuesta, negaron la mayoría de las alegaciones de la *Demanda*. En lo específico, alegaron que fue la parte apelada quien se acercó al señor Soto cuando la Autoridad de Puerto les canceló el contrato, distinto a lo alegado en la *Demanda*. Asimismo, señalaron que el contrato fue firmado casi mes y medio después que la parte apelada asumió la operación de la corporación. Además, indicaron que en el inciso 5 del contrato entre las partes se reconoció que se hicieron unas transacciones y se dispuso que se iban a evaluar las mismas para hacer los correspondientes ajustes en contabilidad.

A su vez, los demandados presentaron una *Reconvención*.[3] Alegaron que, como parte de la adquisición de las corporaciones la parte apelada estaba obligada a pagar las tarjetas de crédito y líneas

---

[2] *Contestación a Demanda*, apéndice 13, págs. 70-72 del apéndice del recurso.
[3] *Reconvención*, apéndice 13, págs. 72-73 del apéndice del recurso.

comerciales del señor Soto utilizadas para hacer transacciones, algo que no hizo. Además, indicaron que la parte apelada luego de adquirir las corporaciones hicieron una transacción aparentemente fraudulenta mediante la cual retiraron alrededor de $120,000.00, provocando un sobregiro en una cuenta de la corporación de $80,000.00, los cuales el banco asoció y reclamó al señor Soto. A esto añadieron, que la parte apelada difamó al señor Soto, alegando que éste se apropió de unas sumas de dinero.

Posteriormente, el 18 de febrero de 2016, el señor Soto presentó una *Moción de sustitución de parte por muerte*.[4] Informó que, la señora Galatzán falleció el día 2 de diciembre de 2015. El 26 de febrero de 2016, el foro primario notificó una *Orden*.[5] En esta, ordenó que se presentara en cuarenta y cinco (45) días la resolución de declaratoria de herederos.

Así las cosas, tras varios tramites procesales, el 2 de octubre de 2024, el Tribunal de Primera Instancia notificó una *Resolución*.[6] Mediante esta, determinó que la señora Galatzán no era parte indispensable en el pleito, toda vez que las alegaciones de la *Demanda* se dirigían en contra del señor Soto. En este sentido, sostuvo que la responsabilidad de la señora Galatzán estaba limitada a lo que podría imponérsele como miembro de la SLG. A tales efectos, concluyó que la responsabilidad de la señora Galatzán era subsidiaria y conveniente pero no indispensable.

---

[4] *Moción de sustitución de parte por muerte*, apéndice 17, pág. 123 del apéndice del recurso.
[5] *Orden*, apéndice 18, pág. 124 del apéndice del recurso.
[6] *Resolución*, apéndice 3, págs. 12-15 del apéndice del recurso.

De modo similar, en esta misma fecha, el foro primario notificó su *Sentencia Enmendada*.[7] Mediante la cual, tomando en consideración la prueba testimonial y documental estableció veinticuatro (24) determinaciones de hechos. A base de estos hechos dispuso lo siguiente:

> [E]n el presente caso resulta claro que medió dolo en el consentimiento de la parte demandante al haber sido inducida por el demandado a acceder asumir las responsabilidades de las corporaciones, sin saber que el demandado pretendía extraer toda su liquidez y únicamente traspasarles las deudas y compromisos contraídos por compañías. Dicho curso de acción provocó el fracaso de las corporaciones y les causó daños a las demandantes.

A tales efectos, declaró **Ha Lugar** la *Demanda* presentada por la parte apelada y **No Ha Lugar** a la reconvención presentada por el señor Soto. En consecuencia, decretó nulo el negocio jurídico y condenó al apelante a pagar las siguientes sumas:

> [D]oscientos mil dólares por concepto de restitución de los fondos sustraídos de la corporación ($200,000.00), ciento quince mil dólares ($115,000.00) por concepto de restitución de los gastos en los cuales la parte demandante incurrió para intentar mantener el negocio operacional, y treinta y cinco mil dólares ($35,000.00) por concepto de los daños y angustias mentales sufridos por las demandantes.

A su vez, desestimó la reclamación de la *Demanda* en contra de la señora Galatzán y la SLG, sin perjuicio. Además, desestimó la *Reconvención* presentada por la señora Galatzán y la SLG, sin perjuicio.

Inconforme, el 1 de noviembre de 2024, el señor Soto presentó el recurso que nos ocupa, mediante el cual formuló los siguientes señalamientos de error:

> Primer error: Erró el TPI al determinar mediante resolución que los miembros de la sucesión de Angela Galatzán no son parte

---

[7] *Sentencia Enmendada*, apéndice 1, págs. 1-10 del apéndice del recurso.

indispensable en la presente causa de acción, habiendo estado el Apelante casado bajo el régimen de sociedad legal de gananciales al momento de los hechos alegados en la demanda.

Segundo error: Erró el TPI al determinar que hubo dolo en la contratación entre las partes provocado por el Apelante en contra de las Apeladas declarando nulo el contrato, cuando las apeladas contrataron a un CPA para auditar el contrato.

Tercer error: Erró el TPI al condenar al Apelante a restituir $200,000.00 de fondos alegadamente sustraídos de la corporación, cuando de la prueba documental presentada evidentemente no surge que se halla sustraído suma alguna a favor del Apelante.

Cuarto error: Erró el TPI al condenar al Apelante a restituir $115,000.00 por gastos que alegan las apeladas haber incurrido las Apeladas para mantener el negocio operacional sin presentar prueba.

Quinto error: Erró el TPl al imponer al Apelante el pago de $35,000.00 por daños y angustias mentales, cuando la Apeladas se provocaron su daño, no presentaron la prueba pericial que anunciaron, ni cumplieron con lo dispuesto en Santiago Montañez vs. Fresenius Medical, 195 D.P.R. 476 (2016) para determinar las cuantías.

Así las cosas, el 3 de diciembre de 2024, emitimos una *Resolución* concediendo a la parte apelada el término dispuesto en nuestro reglamento, 4 LPRA Ap. XXII-B, para presentar su alegato. Transcurrido el término sin la comparecencia de la parte apelada, declaramos perfeccionado el recurso de epígrafe y procedemos a disponer de este.

## II.

### -A-

Un "contrato existe desde que una o varias personas consienten en obligarse respecto de otra u otras, a dar alguna cosa, o prestar algún servicio". Art. 1206 del Código Civil, 31 LPRA sec. 3371. Para ello, es necesario que concurran los siguientes requisitos: (1) el

consentimiento de los contratantes; (2) un objeto cierto que sea materia del contrato, y (3) que se establezca la causa de la obligación. Art. 1213 del Código Civil, 31 LPRA sec. 3391.

En nuestro ordenamiento rige el principio de la libertad de contratación. *Oriental Financial v. Nieves*, 172 DPR 462, 470 (2007). Este principio recoge la autonomía contractual de la que gozan las partes para establecer los pactos, cláusulas y condiciones que tengan por convenientes, siempre que no sean contrarios a la ley, a la moral o al orden público y que en ellos concurran las condiciones esenciales para su validez. Art. 1207 y 1230 del Código Civil, 31 LPRA secs. 3372 y 3451, respectivamente; *VELCO v. Industrial Serv. Apparel*, 143 DPR 243, 250 (1997).

Un contrato se considera nulo cuando "le falta alguno de sus elementos esenciales o porque contraviene algún precepto legal prohibitivo y, por lo tanto, carece de la aptitud necesaria para generar la nueva situación jurídica pretendida por las partes en el negocio". J.R. Vélez Torres, *Curso de Derecho Civil, Derecho de Contratos*, Tomo IV, Vol. II, 1990, pág. 123. En el caso de los contratos que adolecen de nulidad absoluta, estos no producen efectos jurídicos. *Rosario Rosado v. Pagán Santiago*, 196 DPR 180, 187 (2016); Sánchez Rodríguez v. López Jiménez, 116 DPR 172, 183 (1985).

Cónsono con lo anterior, es imprescindible que las partes al contratar presten su consentimiento de manera libre y espontánea. Vélez Torres, op. cit., pág. 45. El consentimiento se manifiesta por la aceptación de una oferta sobre la cosa y causa del negocio. Art. 1214 del Código Civil, 31 LPRA sec. 3401. Existe un vicio del

consentimiento cuando la voluntad contractual se haya formado defectuosamente, ya sea por error, violencia, intimidación o dolo. Art. 1217 del Código Civil, 31 LPRA sec. 3404. En esos casos, las partes vienen generalmente obligadas a restituir las prestaciones objeto del contrato, salvo, cuando la nulidad se deba a causa torpe o ilícita, en cuyo caso debe apreciarse el grado de culpa envuelto de la parte que reclama la devolución. Art. 1255 del Código Civil, 31 LPRA sec. 3514.

Se incurre en dolo cuando una parte es inducida a celebrar el contrato mediante maquinaciones insidiosas, por ejemplo, cuando se le oculta a la parte compradora la existencia de una circunstancia que pudiese constituir un defecto oculto en el objeto vendido y entregado. Art. 1221 del Código Civil, 31 LPRA sec. 3408; *Acosta & Rodas, Inc. v. PRAICO*, 112 DPR 583, pág. 617 (1982); *Márquez v. Torres Campos*, 111 DPR 854, pág. 871 (1982); *Miranda Soto v. Mena Eró*, 109 DPR 473, pág. 478 (1980).

El dolo puede manifestarse al momento de la contratación o, posteriormente, en la consumación del contrato, cuando se omite consciente y voluntariamente cumplir con la obligación. *Colón v. Promo Motor Imports, Inc.*, 144 DPR 659, págs. 666-667 (1997). El dolo no se presume. No obstante, como cualquier otro elemento mental, no tiene que ser establecido directamente, sino que puede inferirse de las circunstancias presentes en el caso en particular. *Canales v. Pan American*, 112 DPR 329, págs. 340-342 (1982). El dolo que causa la nulidad de la obligación es aquél que determina el consentimiento, es el que inspira y persuade a

contratar, sin el cual no hubiera habido contratación. Para que produzca la nulidad del contrato, el dolo tiene que ser grave y no meramente incidental, ni ambas partes incurrir en dolo causal o grave. El dolo incidental sólo da lugar a la indemnización de los daños y perjuicios ocasionados. *Colón v. Promo Motor Imports, Inc.*, supra, págs. 667-668.

-B-

La Regla 16.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 16.1, regula el mecanismo de acumulación de una parte indispensable. *Colón Negrón et al. v. Mun. Bayamón*, 192 DPR 499, 510 (2015). Dicha regla dispone que son partes indispensables aquellas "personas que tengan un interés común sin cuya presencia no pueda adjudicarse la controversia". Regla 16.1 de Procedimiento Civil, *supra*. El propósito de acumular una parte indispensable es proteger a la parte que no está presente en el pleito de los efectos perjudiciales que pudiera tener una sentencia en su contra y evitar la multiplicidad de pleitos. *Íd.*; *Romero v. SLG Reyes*, 164 DPR 721, 733 (2005).

Al momento de determinar si la presencia de una parte es indispensable, el tribunal debe evaluar si podrá hacer justicia y conceder un remedio final y completo sin afectar los intereses del ausente. *Bonilla Ramos v. Dávila Medina*, 185 DPR 667, 677 (2012). En ese sentido, lo que se busca proteger son los intereses de quien no ha sido traído al litigio y que, de dejarse fuera, no tendría oportunidad alguna de defenderlos. *Íd.*

El interés común al que se refiere la Regla 16.1 de Procedimiento Civil, *supra*, no es el de un mero interés

en la controversia, sino aquel de tal orden que impida la confección de un derecho adecuado, sin afectarle. *García Colón v. Sucn. González*, supra, pág. 549.

En cuanto a la frase "sin cuya presencia no pueda adjudicarse la controversia", nuestro más Alto Foro ha expresado lo siguiente:

> [E]xcepto en aquellas circunstancias en las que la adjudicación sin la persona ausente tendría un efecto perjudicial sobre el interés real e inmediato que esta tiene en el pleito, en raras ocasiones será imposible resolver la controversia sin su presencia. *Delíz et als. v. Igartúa et als.*, 158 DPR 403, 433-434 (2003).

Para determinar si la presencia de una parte es indispensable, nuestro Tribunal Supremo ha señalado que tal evaluación requiere un enfoque práctico, a la luz de las circunstancias particulares de cada caso. *Íd.*, pág. 434. Es decir, que el análisis exige una evaluación de los siguientes factores:

> [E]l tiempo, el lugar, las alegaciones, la prueba y las clases de derechos e intereses en conflicto. Es por ello que los tribunales tienen que hacer un análisis juicioso que incluya la determinación de los derechos del ausente y las consecuencias de no unirlo como parte en el procedimiento. *Colón Negrón et al. v. Mun. Bayamón*, supra, pág. 512.

-C-

La sustitución de partes por muerte se rige por las disposiciones de la Regla 22.1 de Procedimiento Civil, *supra*. En lo preciso, la referida regla dispone que:

> (a) Si una parte fallece y la reclamación queda por ello extinguida, se dictará sentencia desestimando el pleito.

> (b) Si una parte fallece y la reclamación no queda por ello extinguida, cualquiera de las partes en el procedimiento o sus abogados o abogadas notificarán el fallecimiento al tribunal y a las otras partes dentro del término de treinta (30) días, contados desde la fecha en que se conozca tal hecho. El tribunal, a solicitud hecha dentro de los noventa (90) días siguientes a la fecha de

dicha notificación, ordenará la sustitución de la parte fallecida por las partes apropiadas. Los(Las) causahabientes o representantes podrán presentar la solicitud de sustitución del(de la) finado(a), y dicha solicitud se notificará a las partes en la forma dispuesta en la Regla 67 y a las que no lo sean en la forma que dispone la Regla 4. La demanda se enmendará a los únicos fines de conformar la sustitución e incorporar las nuevas partes al pleito. Transcurrido el término sin haberse solicitado la sustitución, se dictará sentencia desestimando el pleito, sin perjuicio.

(c) De fallecer uno o más demandantes, o uno o más demandados, que fueren partes en un pleito en que el derecho reclamado subsista sólo a favor de los demandantes o en contra de los demandados que sobrevivan, el pleito no finalizará. Se consignará en los autos el hecho de la muerte y el pleito continuará en favor o en contra de las partes sobrevivientes. 32 LPRA Ap. V, R. 22.1.

Nuestra Máxima Curia ha expresado que la Regla 22.1 de Procedimiento Civil, *supra*, "atiende el interés público de que los asuntos en los tribunales se solucionen de forma expedita para evitar el perjuicio que la dilación pueda causar a las partes". *Vilanova et al. v. Vilanova et al*, 184 DPR 824, 838 (2012). En este sentido, también ha esbozado que "el trámite procesal de sustitución en nada afecta los derechos sustantivos de las partes". *Blassino, Reyes v. Reyes Blassino*, 2024 TSPR 93, 214 DPR __ (2024). A tales efectos, la parte que sustituye se coloca en la misma posición que la parte sustituida. *Íd*.

**-D-**

Los tribunales apelativos no debemos intervenir con la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos de los tribunales de primera instancia. *ELA v. SLG Negrón-Rodríguez*, 184 DPR 464, 486 (2012); *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717, 741 (2007). Esta deferencia

hacia el foro primario responde al hecho de que el juez sentenciador es el que tiene la oportunidad de recibir y apreciar toda la prueba oral presentada, de escuchar la declaración de los testigos y evaluar su *demeanor* y confiabilidad. *Suárez Cáceres v. Com. Estatal Elecciones*, 176 DPR 31, 67 (2009); *López v. Dr. Cañizares*, 163 DPR 119, 135 (2004).

Ahora bien, la doctrina de deferencia judicial no es de carácter absoluto, pues debe ceder ante las posibles injusticias que puedan acarrear unas determinaciones de hechos que no estén sustentadas por la prueba desfilada ante el foro primario. Así, como foro apelativo, podemos intervenir con la apreciación de la prueba oral que haga el Tribunal de Primera Instancia, cuando el foro primario actúe con pasión, prejuicio, parcialidad, o incurra en un error manifiesto al aquilatarla. *González Hernández v. González Hernández*, 181 DPR 746, 776-777 (2011); *Rivera Figueroa v. The Fuller Brush Co.*, 180 DPR 894, 916 (2011); *Meléndez v. Caribbean Int'l. News*, 151 DPR 649, 664 (2000).

Además, se podrá intervenir cuando la apreciación de la prueba no represente el balance más racional, justiciero y jurídico de la totalidad de la prueba y cuando su apreciación se distancia "de la realidad fáctica o ésta [es] inherentemente imposible o increíble." *González Hernández v. González Hernández*, supra, pág. 777; *Pueblo v. Santiago et al.*, 176 DPR 133, 148 (2009).

Se exceptúan de la regla de deferencia las determinaciones de hechos que se apoyan exclusivamente en prueba documental o pericial, ya que los tribunales apelativos están en idéntica posición que el tribunal

inferior al examinar ese tipo de prueba. *González Hernández v. González Hernández*, supra.

**-E-**

En reiteradas ocasiones, el Tribunal Supremo ha expresado que, en las acciones de daños y perjuicios, la estimación y valoración de daños es una tarea difícil y angustiosa, dado que "no existe un sistema de computación que permita llegar a un resultado exacto en relación con el cual todas las partes queden satisfechas y complacidas". *Santiago Montañez v. Fresenius Medical*, 195 DPR 476, 490 (2016); *Rodríguez et al. v. Hospital et al.*, 186 DPR 889, 909 (2012).

Por tal razón, los tribunales apelativos deben guardar deferencia a las valorizaciones de daños que realizan los foros de primera instancia, debido a que estos son los que tienen contacto directo con la prueba testifical y están en mejor posición para emitir un dictamen. *Rodríguez et al. v. Hospital et al.*, supra. Ahora bien, los tribunales apelativos intervendrán con las estimaciones de daños realizadas por el Tribunal de Primera Instancia cuando la cuantía concedida sea exageradamente alta o ridículamente baja. *Íd*. Véase, además, *Herrera, Rivera v. S.L.G. Ramírez-Vicéns*, 179 DPR 774, 787 (2010); *Sagardía de Jesús v. Hosp. Aux. Mutuo*, 177 DPR 484, 509-510 (2009).

Por otro lado, el ejercicio de valoración de daños conlleva cierto grado de especulación y elementos subjetivos, tales como la discreción y el sentido de justicia y conciencia humana del juzgador de los hechos. *Santiago Montañez v. Fresenius Medical*, supra. Además, no existen dos casos idénticos, debido a que cada uno tiene sus circunstancias particulares. *Íd*.

Por tanto, al comparar las cuantías concedidas en casos previos, hay que ajustarlas al valor presente. *Santiago Montañez v. Fresenius Medical*, supra; *Meléndez Vega v. El Vocero de PR*, 189 DPR 123 (2013); *Rodríguez et al. v. Hospital et al.*, supra; *Herrera, Rivera v. SLG Ramírez Vicéns*, supra.

En *Santiago Montañez v. Fresenius Medical*, supra, el Tribunal Supremo advirtió a los jueces del Tribunal de Primera Instancia respecto a la importancia de detallar específicamente en los dictámenes los casos similares utilizados como referencia o punto de partida para la estimación y valoración de daños, y el cómputo realizado para establecer las cuantías que se concedan. Esto, debido a que las compensaciones otorgadas en casos previos constituyen un punto de partida y referencia útil para que los tribunales apelativos puedan pasar juicio sobre las concesiones otorgadas por el foro primario. Íd.

### III.

En el recurso que nos ocupa, el señor Soto solicitó la revisión de dos dictámenes, a saber, una *Resolución* y una *Sentencia* Enmendada, notificadas el 2 de octubre de 2024.

En primer lugar, el apelante sostiene que el foro primario erró al determinar mediante resolución que la sucesión de la señora Galatzán no eran parte indispensable en el pleito de epígrafe. Sostiene que, la parte apelada una vez notificada del fallecimiento de la señora Galatzán venía obligada a enmendar la *Demanda* para incluir la sucesión, algo que no hizo. Por lo cual, arguye que procedía el relevo de sentencia por falta de parte indispensable.

Sobre el segundo señalamiento de error, alega que, la parte apelada operó las corporaciones por 41 días antes de firmar el contrato y que de los estados bancarios no surge ninguna transacción a nombre del apelante, solo transacciones típicas de negocios. A esto añade, que se había realizado una auditoria por un CPA antes de suscribir el contrato. Ante ello, argumenta que el foro apelado incidió al determinar que hubo dolo en el consentimiento del contrato.

En cuanto el tercer, cuarto y quinto error, el señor Soto los discutió en conjunto dado que parten de la apreciación de la prueba. En esencia, alega que la parte apelada no presentó prueba objetiva y documental alguna para sostener las alegaciones de su *Demanda*. Señala que, la parte apelada descansó solamente en su propio testimonio cuando éstas tenían acceso a las cuentas y transacciones de las corporaciones. Por tal razón, arguye que el foro primario incidió al condenar al señor Soto el pagó de: $200,000.00 por concepto de restitución de los fondos sustraídos de la corporación, $115,000.00 por los gastos que la parte apelada incurrió para intentar mantener el negocio operacional y $35,000.00 por daños y angustias mentales sufridas por la parte apelada.

Previo a comenzar nuestro análisis, reiteramos que como norma sentada los foros revisores no debemos intervenir con la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos de los tribunales de primera instancia. *ELA v. SLG Negrón-Rodríguez*, supra, pág. 486; *Serrano Muñoz v. Auxilio Mutuo*, supra, pág. 741. Esto responde al hecho de que es el juez sentenciador quien tuvo la oportunidad

de recibir y apreciar la prueba oral presentada, de escuchar la declaración de los testigos y determinar su confiablidad. *Suárez Cáceres v. Com. Estatal Elecciones*, supra, pág. 67; *López v. Dr. Cañizares*, supra, pág. 135. A pesar de esto, esta deferencia no es de carácter absoluto, pues debe ceder cuando las determinaciones de hechos no están sustentadas por la prueba desfilada ante el foro primario. *González Hernández v. González Hernández*, supra, págs. 776-777.

En el presente recurso, el apelante no presentó la transcripción de la prueba oral desfilada en el Tribunal de Primera Instancia. Ante este cuadro, no podemos evaluar la apreciación de la prueba realizada por el foro primario. Por lo cual, acogemos las determinaciones de hecho realizadas por el Tribunal de Primera Instancia en su totalidad y evaluaremos la corrección de su aplicación en derecho.

En cuanto el primer señalamiento de error, el señor Soto sostiene que la sucesión de la señora Galatzán era parte indispensable en el pleito. Según el derecho previamente esbozado, una parte indispensable es aquella persona que tenga un interés común sin cuya presencia no pueda adjudicarse la controversia. 32 LPRA Ap. V, R. 16.1. En este sentido, para determinar si una parte es indispensable se requiere un enfoque práctico, a tenor con las particularidades de cada caso. *Delíz et als. v. Igartúa et als.*, supra, pág. 434. En otras palabras, requiere evaluar factores tales como el tiempo, el lugar, las alegaciones, la prueba y las clases de derechos e intereses en conflicto. *Colón Negrón et al. v. Mun. Bayamón*, supra, pág. 512.

En el caso de marras, la señora Galatzán falleció durante el transcurso del pleito. No obstante, el apelante nunca presentó la declaratoria de herederos de la causante ni la parte apelada solicitó la sustitución de parte. En consecuencia, la señora Galatzán nunca fue sustituida.

Dicho esto, examinada las alegaciones de la *Demanda* de la parte apelada, éstas se dirigen exclusivamente contra el señor Soto. No se le imputa acción u omisión culposa o negligente a la señora Galatzán. La participación de la señora Galatzán se limitaba a ser miembro de la sociedad legal de gananciales con el señor Soto, por lo cual, su participación era subsidiaria. A tales efectos, no era una parte indispensable en el pleito de epígrafe.

Sobre el segundo señalamiento de error, es menester recalcar que existe dolo "cuando con palabras o maquinaciones insidiosas de parte de uno de los contratantes, es inducido el otro a celebrar un contrato que, sin ellas, no hubiera hecho". Art. 1221 del Código Civil, 31 LPRA sec. 3408. No obstante, para que produzca la nulidad del contrato, el dolo deberá ser grave y no haber sido empleado por las dos partes contratantes. Art. 1222 del Código Civil, 31 LPRA sec. 3409.

En vista de lo anterior, no nos resulta convincente los argumentos del señor Soto de que el foro primario incidió al determinar que hubo dolo en el consentimiento del contrato. Es cierto que la parte apelada operó por 41 días las corporaciones antes de suscribir el contrato de traspaso. Sin embargo, era el señor Soto quien manejaba las cuentas bancarias de las corporaciones, teniendo el dominio exclusivo de éstas.

A su vez, el argumento de que no hubo dolo dado que la parte apelada contrató a un CPA para auditar el contrato también carece de mérito. El estado de las cuentas del negocio levantados por el CPA fue hasta el mes de abril de 2011. No obstante, el contrato de traspaso dispuso que el señor Soto realizó ciertas transacciones las cuales serían posteriormente evaluadas para realizar los ajustes de contabilidad que correspondieran. En este sentido, el contrato no estableció la naturaleza o cuantías de dichas transacciones. Por ello, el retiro inesperado de $200,000.00 de las corporaciones vició el avalúo de las finanzas por parte del CPA.

Nos resulta evidente que el consentimiento de la parte apelada al suscribir el contrato de traspaso estuvo viciado mediante dolo. La expectativa de la parte apelada era recibir compañías que estaban operacionales. No obstante, el señor Soto pretendía despojar las corporaciones de su liquidez económica y solamente traspasar las deudas y obligaciones financieras para que la parte apelada asumiera las mismas. Como resultado, causó el fracaso económico de las compañías. Por lo cual, el foro primario no incidió al determinar que hubo dolo en la contratación entre las partes provocado por el apelante y, en consecuencia, declarar nulo el negocio jurídico.

Por estar relacionados, discutiremos el tercer, cuarto y quinto error en conjunto. Es norma reiterada que los tribunales apelativos deben guardar deferencia a las valorizaciones de daños que realizan los foros primarios, toda vez que son los que tienen contacto directo con la prueba. *Rodríguez et al. v. Hospital et*

*al.*, *supra*. Aun así, los foros revisores intervendrán con las estimaciones de daños cuando las cuantías concedidas sean exageradamente altas o ridículamente bajas. *Íd*.

Tras evaluar detalladamente el dictamen apelado, consideramos que no debemos intervenir con la adjudicación de los daños realizados por el Tribunal de Primera Instancia. Las partidas concedidas fueron sostenidas por la prueba y no fueron exageradamente altas ni ridículamente bajas. A su vez, conforme al derecho aplicable, el foro primario utilizó un caso similar como punto de partida para su estimación y valoración de daños.

Por todo lo cual, concluimos que el Tribunal de Primera Instancia no cometió los errores señalados por el apelante en el recurso que nos ocupa.

**IV.**

Por los fundamentos antes expuestos, **CONFIRMAMOS** los dictámenes apelados.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones