ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| MIGUEL A. ORTÍZ BOU<br><br>Parte Recurrida<br><br><br>v.<br><br><br>LERYNITZA MENDEZ ROSADO, SUNNOVA, **WINDMAR RENEWABLE ENERGY, INC., H/N/C WIN DMAR HOM**<br><br>Parte Peticionaria | TA2025CE00280 | *Certiorari,* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br><br>Caso Núm.:<br>BY2023CV01320<br><br><br>Sobre:<br>Incumplimiento de Contrato |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y la Jueza Prats Palerm.

Monge Gómez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 26 de agosto de 2025.

Compareció ante este Tribunal la parte peticionaria, Windmar P.V. Energy, Inc. h/n/c Windmar Home (en adelante, "Windmar" o la "Peticionaria"), mediante recurso de *Certiorari* presentado el 12 de agosto de 2025. Nos solicitó la revocación de la *Resolución Interlocutoria* emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón (en adelante, el "TPI"), el 19 de julio de 2025 y notificada el 21 de julio de 2025. A través del aludido dictamen, el TPI declaró "No Ha Lugar" una "**Moción de Desestimación**" presentada por la Peticionaria.

Por los fundamentos que expondremos a continuación, se *expide* el recurso de *certiorari* y se *confirma* el dictamen recurrido.

**I.**

Los hechos del caso de autos se remontan al 8 de marzo de 2023, cuando el Sr. Miguel A. Ortíz Bou (en adelante, el "señor Ortíz Bou") presentó una "**Demanda**" en contra de la Sra. Lerynitza Méndez Rosado (en adelante, la "señora Méndez Rosado" o la "Recurrida") por incumplimiento de contrato. En síntesis, el señor Ortíz Bou alegó que la señora Méndez

Rosado le vendió su propiedad a cambio de que éste pusiera al día la hipoteca que gravaba el aludido inmueble y que realizara los pagos subsiguientes de la misma. A tales efectos, el señor Ortíz Bou presuntamente asumió los pagos de la hipoteca, ascendientes a tres mil novecientos noventa y siete con sesenta y dos centavos ($3,997.62), por más de diez (10) años. No obstante lo anterior, adujo que la señora Méndez Rosado se rehusó a firmar las escrituras de traspaso de titularidad. Asimismo, planteó que la Recurrida le exigió que abandonara la propiedad dado a que es la propietaria y lo amenazó de iniciar las acciones legales para recuperar su propiedad. Por ello, el señor Ortíz Bou le solicitó al foro primario que ordenara a la señora Méndez Rosado a otorgar las referidas escrituras, acorde a lo pactado y proceder con el traspaso de la titularidad del bien inmueble. Finalmente, expresó que la Recurrida incumplió dolosamente el acuerdo habido entre las partes y solicitó que le concedieran daños por el aludido incumplimiento.

Por su parte, el 14 de abril de 2023, la señora Méndez Rosado presentó su "**Contestación a Demanda y Reconvención**" (en adelante, *Reconvención*), en la que adujo que entre las partes únicamente existía un contrato de arrendamiento, no de compraventa. Asimismo, en su *Reconvención* argumentó que realizó distintas gestiones extrajudiciales para que el señor Ortíz Bou comprara o desalojara la propiedad. Expuso que éste ha comprometido su crédito al realizar pagos erráticos, lo cual le provocó daños económicos. Además, alegó que el señor Ortíz Bou hurtó su identidad al utilizar su nombre, su crédito, identificación y falsificar su firma para la instalación de placas solares en la propiedad. Por todo lo anterior, la Recurrida le solicitó al foro de instancia que ordenara el desahucio y lanzamiento del señor Ortíz Bou y que éste respondiera por las angustias y sufrimientos mentales, y los daños económicos, así como de otros gastos del litigio.

A su vez, el 21 de abril de 2023, la señora Méndez Rosado presentó una "**Demanda contra Tercero**" en contra de Windmar y Sunnova. Mediante ésta, argumentó que ambas compañías debían responderle por

los daños ocasionados a raíz de que el señor Ortíz Bou utilizó su crédito y su información personal para la instalación de placas solares en la propiedad, sin su consentimiento. Específicamente, detalló que la responsabilidad de estos "estriba en no mantener unos controles y protocolos adecuados para identificar el robo de identidad y falsificación de firmas".[1] Añadió que, al notificarles sobre lo sucedido, se limitaron a indicar que realizarían una investigación. Sin embargo, y al día de presentada la *Demanda contra Tercero,* el contrato continuaba vigente. A la luz de lo anterior, solicitó que se ordenara el pago por angustias y sufrimientos mentales, así como los daños económicos sufridos por disminuir su capacidad crediticia al comprometer su crédito con el préstamo para la instalación de las placas solares.

Del mismo modo, el 13 de noviembre de 2023, la señora Méndez Rosado presentó una "**Moción solicitando Anotación de Rebeldía**" en la cual argumentó que había transcurrió el término para que Sunnova y Windmar presentaran sus respectivas alegaciones responsivas. Conforme a lo solicitado, el 15 de noviembre de 2023, el TPI determinó, en lo pertinente, que Windmar fue emplazado el 29 de agosto de 2023. Ante la incomparecencia de la Peticionaria, el foro primario emitió una *Orden* en la cual anotó la rebeldía.

Luego de varios trámites procesales, el 12 de mayo de 2025, la Peticionaria compareció mediante una "**Moción Asumiendo Representación Legal y Para Levantar la Anotación de Rebeldía**". En ésta, Windmar argumentó que, por un error involuntario interno en el trámite de notificar a las personas pertinentes para comparecer oportunamente, no advino en conocimiento de la *Demanda contra Tercero.* Sostuvo que su incomparecencia no constituyó un obstáculo para que las partes procedieran con el descubrimiento de prueba. Por tanto, solicitó que se dejara sin efecto la anotación de rebeldía. Además, expuso que el señor Ortíz Bou presentó una declaración jurada firmada por éste y la Recurrida, donde los autorizó a tomar todas las decisiones administrativas de la

---

[1] *Véase,* SUMAC TPI, entrada núm. 8, pág. 2, ¶ 7.

propiedad. Además, expuso que el señor Ortíz Bou entregó la licencia de conducir de la Recurrida como parte del trámite. Por otro lado, estableció que Windmar no tuvo participación en la aparente falsificación de firmas, toda vez que el contrato de financiamiento fue generado por Sunnova (compañía financiera) y que fue esta última la que remitió al señor Ortíz Bou y a la señora Méndez Rosado los documentos para las correspondientes firmas.

El 14 de mayo de 2025, el foro de instancia emitió una *Orden* en la cual le concedió a las partes un término de veinte (20) días para que expresaran su posición en cuanto a la solicitud de Windmar.

Así las cosas, la señora Méndez Rosado presentó su "**Moción en Cumplimiento de Orden y Oposición a Solicitud de Levantar Anotación de Rebeldía**" en la cual arguyó que el descubrimiento de prueba culminó el 29 de febrero de 2024, que las partes ya habían presentado un "**Informe Preliminar entre Abogados**" en preparación para la *Conferencia con Antelación al Juicio* y que, al momento, se encontraban en la espera de la continuación de la misma. Insistió en que un Tribunal podía dejar sin efecto la anotación de rebeldía bajo justa causa, sin embargo, este no era el caso de la Peticionaria.

Por su parte, el señor Ortíz Pou presentó su "**Moción en Torno a solicitud de Relevo de Orden de Rebeldía**" en la que indicó no tener reparo para que se levantara la rebeldía de Windmar. A esos efectos, el 3 de junio de 2025, el foro primario emitió una *Orden* en la cual sostuvo su determinación y mantuvo la anotación de rebeldía.

Posteriormente, el 24 de junio de 2025, Windmar presentó una "**Moción de Desestimación**", al amparo de la Regla 10.2(5) de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2 (5). Argumentó que, aun una parte en rebeldía conserva su derecho para cuestionar la suficiencia de las alegaciones formuladas en su contra. Detalló que en la *Demanda contra Tercero* solo existe una (1) alegación generalizada en contra de todos los terceros codemandados. Especificó que en la alegación no señaló cuáles controles podían evitar la alegada falsificación de firma y hurto de identidad.

Tampoco mencionó quiénes son los responsables de tener dichos controles y protocolos. Concluyó que la Recurrida falló en delimitar la responsabilidad de ambas entidades mediante una relación concisa y directa en la cual basa su reclamo. Ante tal escenario, el foro recurrido concedió hasta el 14 de julio de 2025, para que la señora Méndez Rosado presentara su réplica a la *Moción de Desestimación*.

Así pues, el 16 de julio de 2025, la Recurrida presentó su "**Oposición a "Moción de Desestimación"**" en la cual planteó que Windmar no tomó por ciertas las alegaciones plasmadas en la *Demanda contra Tercero* por lo que no cumplió con los parámetros de la Regla 10.2 (5) de Procedimiento Civil, *supra*. Reiteró que estos descansaron en lo informado por el señor Ortíz Bou para la instalación de las placas. Desglosó que las alegaciones le imputan que:

> 1. que se utilizó el nombre y crédito de la demandada-reconvenida para instalar placas solares en la propiedad en cuestión, utilizando su firma y licencia de conducir sin autorización;
>
> 2. que los demandados contra terceros no mantuvieron los controles y protocolos adecuados para evitar el robo de identidad y falsificación para con la demandada-reconvenida;
>
> 3. que la demandada-reconveniente le notificó la situación y aunque dijeron que investigarían no fue así. Al punto que aún mantienen el contrato de placas fraudulento vigente y comprometiendo el crédito de la demandada-reconveniente.

En esta misma fecha, la Peticionaria presentó una "**Breve Réplica a Oposición a "Moción de Desestimación"**" (en adelante, *Réplica a Oposición*) en la que arguyó que la única alegación pertinente le imputa la responsabilidad de los daños a dos (2) entidades distintas y separadas, entiéndase, Sunnova y Windmar. De igual forma, la Recurrida no señaló a cuál de las dos (2) instituciones reportó la alegada falsificación de firmas. Reiteró que, si se tomara como ciertas las alegaciones en la *Demanda contra Tercero*, éstas no están dirigidas contra Windmar, toda vez que no proveen financiamiento y tampoco tienen la potestad de enmendar o cancelar un contrato del cual no participó.

En virtud de ello, el TPI emitió una *Resolución Interlocutoria* en la que decretó "No Ha Lugar" a la *Moción de Desestimación* presentada por la Peticionaria.

Inconforme con la determinación del foro primario, Windmar presentó el recurso que nos ocupa, mediante el cual le imputó la comisión de los siguientes errores:

> 1. Erró el TPI al denegar la Moción de Desestimación presentada por Windmar al amparo de la Regla 10.2 de Procedimiento Civil de Puerto Rico.
>
> 2. Erró el TPI al permitir a la parte tercera demandante enmendar sus alegaciones mediante alegaciones nuevas en su Oposición a Moción de Desestimación sin reconocerle el debido proceso de ley a una parte en rebeldía de contestar dichas alegaciones enmendadas.
>
> 3. Erró el TPI al no desestimar la acción por carecer de alegaciones suficientes en derecho para justificar una causa de acción viable en derecho.

El 25 de agosto de 2025, la señora Méndez Rosado presentó su "**Oposición a Expedición de Auto y Alegato en Oposición al *Certiorari***".

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II.

### A.

El auto de *certiorari* es el recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar, a su discreción, una decisión de un tribunal inferior. McNeil Healthcare v. Mun. Las Piedras I, 206 DPR 391, 403 (2021). "[L]a característica distintiva de este recurso se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos". Rivera *et al.* v. Arcos Dorados *et al.*, 212 DPR 194, 209 (2023). Así, este solo se expedirá luego de justipreciar los criterios establecidos en la Regla 40 de nuestro Reglamento, 4 LPRA Ap. XXII-B, R. 40, y en aquellas instancias específicas que delimita la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1. A esos efectos, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, limita la autoridad de este Tribunal de Apelaciones para revisar las órdenes y resoluciones interlocutorias que dictan los tribunales de instancia por medio del recurso discrecional del

*certiorari*. En lo pertinente, la precitada disposición reglamentaria, *supra*, dispone que:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable la justicia, al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. Íd.

Con el fin de que podamos ejercer de una manera sensata nuestra facultad discrecional de entender o no en los méritos de los asuntos que son planteados mediante el recurso, la Regla 40 de nuestro Reglamento, 4 LPRA Ap. XXII-B, señala los criterios que debemos considerar al atender una solicitud de expedición de un auto de *certiorari*. BPPR v. SLG Gómez-López, 213 DPR 314, 336 (2023). En lo pertinente, la precitada disposición reglamentaria establece lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari*, o de una orden de mostrar causa:
>
>> A. Si el remedio y la disposición de la decisión recurrida a diferencia de sus fundamentos son contrarios a derecho.
>> B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
>> C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>> D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>> E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>> F. Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>> G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, *supra*.

Dentro de este marco, el análisis del foro apelativo intermedio -al momento de considerar los asuntos planteados mediante el recurso de *certiorari*- no se efectúa en el vacío ni se aparta de otros parámetros. Rivera *et al.* v. Arcos Dorados *et al.*, *supra*, pág. 209; 800 Ponce de León v. AIG, 205 DPR 163, 176 (2020). Las delimitaciones que imponen estas disposiciones reglamentarias tienen como objetivo intrínseco prevenir la "dilación que causaría la revisión judicial de controversias que pueden esperar a ser planteadas a través del recurso de apelación". Mun. Caguas v. JRO Construction, Inc.*,* 201 DPR 703, 712 (2019). Nótese que, distinto al recurso de apelación, el auto de *certiorari*, por ser un recurso discrecional, debe ser utilizado con cautela y por razones de peso. Pueblo v. Díaz de León, 176 DPR 913, 918 (2009).

En ese sentido, el Tribunal Supremo de Puerto Rico reiteradamente ha indicado que la *discreción* significa tener poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción. García v. Padró, 165 DPR 324, 334 (2005). El adecuado ejercicio de la discreción judicial está "inexorable e indefectiblemente atado al concepto de la razonabilidad". Pueblo v. Ortega Santiago, 125 DPR 203, 211 (1990). Así pues, un tribunal apelativo no intervendrá con las determinaciones discrecionales de un tribunal sentenciador, a no ser que las decisiones emitidas por este último sean arbitrarias o en abuso de su discreción. S.L.G. Flores-Jiménez v. Colberg, 173 DPR 843, 865 (2008).

Así pues, conforme a la doctrina reseñada, la Regla 52.1 de Procedimiento Civil, *supra*, vislumbra la obligación de este Tribunal de entender en los méritos de determinaciones interlocutorias relacionadas con mociones dispositivas.

**B.**

La Regla 10.2 de Procedimiento Civil y su jurisprudencia interpretativa le confiere al demandado la oportunidad de presentar cualquiera de las siguientes defensas: (1) falta de jurisdicción sobre la materia; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; (5)

que las alegaciones del demandante dejan de exponer una reclamación que justifique la concesión de un remedio; y (6) la falta de una parte indispensable. 32 LPRA Ap. V, R. 10.2.

La moción de desestimación bajo la Regla 10.2 de Procedimiento Civil, *supra*, es una defensa que formula el demandado antes de presentar su contestación a la demanda, en la cual solicita que se desestime la demanda presentada en su contra. Aut. Tierras v. Moreno & Ruiz Dey. Corp., 174 DPR 409, 428 (2008); Colón v. Lotería, 167 DPR 625, 649 (2006). En general, la Regla 10.2 de Procedimiento Civil, *supra*, "recoge defensas que pueden plantearse, a opción del demandado, en una moción de desestimación antes de contestar o en la misma contestación a la demanda". González v. Mayagüez Resort & Casino, 176 DPR 848, 855 (2009) (citando a R. Hernández Colón, Práctica jurídica de Puerto Rico: Derecho Procesal Civil, 4ta ed., San Juan, Ed. Lexisnexis, 2007, Sec. 2601, pág. 230).

De ahí que, al considerar una moción para desestimar una demanda por ésta dejar de exponer una reclamación que justifique la concesión de un remedio, deba ser evaluada de forma crítica. Ello, puesto que el tribunal está obligado a tomar como ciertos los hechos bien alegados en la demanda. Hecha esta salvedad, el Tribunal interpretará las aseveraciones de la demanda en la forma más favorable para el demandante formulando en su favor todas las inferencias que puedan asistirle. Rivera Sanfeliz, *et al.* v. Jta. Dir. First Bank, 193 DPR 38, 49 (2015). De igual forma, nuestro más alto foro ha establecido que:

> [A] los fines de disponer de una moción de desestimación, estamos obligados a dar por ciertas y buenas todas las alegaciones fácticas de la demanda presentada. Para prevalecer, el promovente de la moción tiene que demostrar que, aun así, la demanda no expone una reclamación que justifique la concesión de un remedio. Esta doctrina se aplica solamente a los hechos bien alegados y expresados de manera clara y concluyente, que de su faz no den margen a dudas. Pressure Vessels PR v. Empire Gas PR, 137 DPR 497, 505 (1994).

Sobre este asunto, el Dr. José Cuevas Segarra expone que "[e]n la moción de desestima[ción] no se trata de poner en duda los hechos alegados en la demanda, sino atacarla por un vicio intrínseco, por ejemplo:

insuficiencia, ausencia de parte indispensable, [o] falta de jurisdicción". J.A. Cuevas Segarra, Tratado de Derecho Procesal Civil, Publicaciones JTS, San Juan, Tomo I, 2000, pág. 275.

En fin, "la demanda no deberá ser desestimada a menos que se desprenda con toda certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de hechos que puedan ser probados en apoyo de su reclamación". Pressure Vessels PR. v. Empire Gas P.R., *supra*, pág. 505. Consecuentemente, se debe considerar "si a la luz de la situación más favorable al demandante, y resolviendo toda duda a favor de éste, la demanda es suficiente para constituir una reclamación válida". Íd.

Ahora bien, si en una moción basada en la Regla 10.2 (5) de Procedimiento Civil, *supra*, se esbozan materias no contenidas en la alegación impugnada —y estas no son excluidas por el tribunal— la moción deberá ser considerada como una solicitud de sentencia sumaria. En consecuencia, estará sujeta a todos los trámites provistos en la Regla 36 de Procedimiento Civil hasta su resolución final. De manera que, todas las partes deberán tener una oportunidad razonable de presentar toda materia pertinente a tal moción bajo dicha regla. Regla 10.2 de Procedimiento Civil, *supra.*

Relacionado con lo anterior, la jurisprudencia ha identificado casos que contienen elementos subjetivos, de intención, propósitos mentales o negligencia. A saber, "controversias en las que el factor credibilidad juega un papel esencial, si no decisivo, para llegar a la verdad, y donde un litigante depende en gran parte de lo que extraiga del contrario en el curso de un juicio vivo." Rosario Ortíz v. Nationwide Mutual Insurance Co., 158 DPR 775, 780-781 (2003). A esos efectos, "la privación a un litigante de su 'día en corte' es una medida procedente sólo en casos extremos y que debe usarse solamente en casos claros. Íd*.,* pág. 780.

**C.**

La Regla 12.1 de Procedimiento Civil, dispone que:

La parte demandada podrá notificar, como demandante contra tercero, un emplazamiento y demanda a una persona que no sea parte en el pleito y que sea o pueda ser responsable a la parte demandada por la totalidad **o parte de la reclamación**

> **de la parte demandante, o que sea o pueda ser responsable a cualquier parte en el pleito**.
>
> [...]
>
> La persona así emplazada, quien en lo sucesivo se denominará "tercero(a) demandado(a)", presentará sus defensas a la reclamación del(de la) demandante contra tercero según se dispone en la Regla 10, y presentará su reconvención a la reclamación del(de la) demandante contra tercero y las reclamaciones contra coparte que tenga contra cualquier otro(a) tercero(a) demandado(a) según se dispone en la Regla 11. 32 LPRA Ap. V, R. 12.1 (énfasis suplido).

**El propósito principal de una demanda contra tercero es facilitar la solución pronta y económica de los pleitos que puedan surgir de un mismo hecho**. SLG Szendrey v. Hospicare, Inc., 158 DPR 648, 653 (2003); Camaleglo v. Dorado Wings, Inc., 118 DPR 20, 28 (1986). Es menester señalar que este mecanismo acelera la dilucidación de las controversias, este no crea, extiende o limita los derechos sustantivos. Maldonado Rivera v. Suárez y otros, 195 DPR 182, 191 (2016). El Tribunal Supremo ha enfatizado que se deben cumplir dos (2) requisitos ulteriores: (1) que la reclamación contra tercero sea contingente al resultado de la demanda original; y (2) que exista una relación suficientemente estrecha -o entronque común- entre la demanda original y la demanda contra tercero. Íd., pág. 192. Entiéndase, la demanda contra tercero procede únicamente "**cuando la responsabilidad de éste dependa en alguna forma del resultado de la acción principal o cuando el tercero le es secundaria o directamente responsable al demandante**". Camagelo v. Dorado Wings, Inc., *supra*, pág. 30 (énfasis suplido).

Nuestra jurisprudencia ha establecido que, al evaluar el entronque común, se debe examinar si existe una relación entre la demanda original y la reclamación que se pretende presentar contra el tercero demandado. Colón Negrón *et al.* v. Mun. Bayamón, 192 DPR 499, 520-521 (2015). Ahora bien, aunque tiene una interpretación liberal, la demanda contra tercero no puede utilizarse para acumular en un mismo pleito controversias dispares por el hecho de que hay una relación en común. Íd., pág. 521; Gen. Accid. Ins. Co. PR v. Ramos, 148 DPR 523, 534 (1999); Camaleglo v. Dorado Wings, Inc., *supra*, pág. 30.

**III.**

En el presente caso, Windmar nos solicita que revoquemos la *Resolución Interlocutoria* del TPI fundamentada en tres (3) aspectos, a saber: (1) que el foro primario erró al denegar la *Moción de Desestimación*, al amparo de la Regla 10.2 (5) de Procedimiento Civil, *supra*; (2) que erró al permitir que la Recurrida enmendara sus alegaciones mediante la *Oposición a Moción de Desestimación*, sin reconocerle el debido proceso de ley a la parte en rebeldía; y (3) que erró al no desestimar la acción por carecer de alegaciones suficientes que justifiquen una causa de acción viable. Evaluados los señalamientos de error y el derecho aplicable a la controversia, concluimos que no le asiste la razón. Veamos.

Para propósitos de adjudicativos, disponemos conjuntamente de los tres (3) señalamientos de error traídos ante nuestra consideración.

En el caso que nos ocupa, es necesario tener presente los requisitos que exige nuestro ordenamiento jurídico para presentar una demanda contra tercero: (1) que dicho tercero sea o pueda ser responsable por la totalidad o parte de la reclamación de la parte demandante; (2) que sea o pueda ser responsable a cualquier parte en el pleito; (3) que la reclamación contra tercero sea contingente al resultado de la demanda original; y (4) que exista un entronque común entre la demanda original y la demanda contra tercero. Debemos reiterar que la demanda contra tercero no puede utilizarse para acumular en un mismo pleito controversias dispares por el hecho de que existe una relación en común. Recordemos que el propósito de la Regla 12.1 de Procedimiento Civil, *supra*, tiene como objetivo principal la solución pronta y económica de los pleitos que puedan surgir de un mismo hecho.

A la luz de lo expuesto anteriormente, examinemos el tracto fáctico de este caso. El pleito original tiene su génesis cuando el señor Ortíz Bou presentó una *Demanda* en contra de la Recurrida por incumplimiento de contrato. En síntesis, alegó que la señora Méndez Rosado le vendió su propiedad a cambio de que éste asumiera los pagos de una deuda hipotecaria que ésta mantenía, así como los pagos vencidos no realizados. Siendo así, y luego de diez (10) años, la Recurrida presuntamente se negó

a firmar la escritura de traspaso de titularidad a favor del señor Ortíz Bou, en alegada contravención a lo pactado entre ambos.

Por su parte, la señora Méndez Rosado presentó una *Reconvención* en la que alegó que el señor Ortíz Bou incumplió con los pagos de la hipoteca, lo cual resultó en daños a su crédito. Entre otras cosas, le imputó el hurto de su identidad y falsificación de su firma para la instalación de placas solares en la propiedad en cuestión. Posteriormente, la Recurrida presentó una *Demanda contra Tercero* en contra de Windmar y Sunnova. En ésta, responsabilizó a ambas entidades, de manera conjunta, por no mantener un protocolo o control adecuado para identificar un robo de identidad y falsificación de firmas. Además, alegó que notificó la situación, pero se limitaron a responderle que llevarían a cabo la investigación requerida.

Conforme a lo solicitado por la Recurrida, el TPI le anotó la rebeldía a la Peticionaria, toda vez que esta fue debidamente emplazada y no compareció. **Ante este Tribunal de Apelaciones no existe una controversia sobre la denegatoria del TPI de levantar la anotación de rebeldía en contra de Windmar. De hecho, al día de hoy, dicha determinación es final y firme**. Esto, indefectiblemente, tiene el efecto de que se estimen aceptadas y ciertas todas las materias bien alegadas en contra de Windmar. Mitsubishi Motor v. Lunor y otros, 212 DPR 807, 825 (2023). A su vez, implica que lo único a lo que la Peticionaria tiene derecho es a conocer del señalamiento de vista, asistir a la misma, a contrainterrogar los testigos que, en su día, presente la Recurrida en cuanto a las alegaciones esgrimidas en su contra por vía de la *Demanda contra Terceros* y a apelar la sentencia que en su día recaiga. **Nada más le reconoce nuestro ordenamiento**. Íd., págs. 825-826. Por tanto, habiendo advenido final y firme la determinación del TPI de mantener la anotación de rebeldía en contra de Windmar, sostenemos que esta última no tenía la potestad de cuestionar la procedencia o no de las alegaciones traídas en su contra mediante la *Moción de Desestimación* que nos ocupa.

Nótese, pues, que la Regla 12.1 de Procedimiento Civil, *supra*, le confiere al tercero demandado el plazo de treinta (30) días desde que se diligencia su emplazamiento para presentar su alegación responsiva e invocar las defensas que entienda procedentes. El récord es claro a los efectos de que dicho término transcurrió sin que Windmar compareciera ante el TPI y sin que para dicho foro constituyera justa causa para la tardanza en presentar alegación responsiva el hecho de que no se canalizó el emplazamiento correctamente dentro de la estructura administrativa de la Peticionaria. **Por tanto, su *Moción de Desestimación* es a destiempo e improcedente en derecho ante la realidad procesal de que Windmar es un tercero demandado en rebeldía con limitados derechos bajo estas circunstancias**. Conceder el remedio de la desestimación, de plano, hubiera implicado levantar la rebeldía por vía de dicha solicitud dispositiva y trastocar los trámites procesales que constituyen la ley del caso.

Ahora bien, aun si hiciéramos abstracción de lo anterior, concluimos que el foro *a quo* no se equivocó al denegar la solicitud de desestimación de la *Demanda contra Terceros*. Contrario a lo que arguye Windmar ante nos, si analizamos de la manera más beneficiosa para la Recurrida las alegaciones planteadas en contra de la Peticionaria, las mismas establecen una reclamación que justifica la concesión de un remedio. Ante nos y ante el TPI, la Peticionaria sostiene que la alegación sobre no mantener los controles y protocolos adecuados para identificar el robo de identidad y falsificación de firmas no le es imputable a ésta sino al restante de los terceros demandados y, por tanto, es una alegación conclusiva y generalizada. No obstante, ni del legajo apelativo ni del expediente del TPI se desprende ni un solo ápice de prueba que pueda dirigirnos a acoger su teoría, más allá de meras alegaciones expuestas por la Peticionaria.

Tal y como adelantamos, en su día, Windmar podrá contrainterrogar la evidencia y a través de su turno de prueba tendrá la oportunidad de demostrarle a la juzgadora de instancia que, en efecto, no se le puede imputar responsabilidad sobre la alegada falta de controles para prevenir el fraude. Sumado a lo anterior, no podemos olvidar que las disposiciones

reglamentarias que gobiernan la presentación de demandas contra terceros están fundamentadas en promover la máxima en nuestro ordenamiento jurídico de propender a una solución pronta y económica de los pleitos. Acoger la postura de la Peticionaria equivaldría a abandonar dicho principio rector, toda vez que en el presente caso (1) la reclamación contra la Peticionaria es contingente al resultado de la *Reconvención* (alegación original sobre el asunto relacionado con el presunto fraude y falta de controles desplegada por Windmar); (2) existe una relación suficientemente estrecha –o entronque común– entre la *Reconvención* y la *Demanda contra Tercero*; y (3) Windmar podría serle responsable a la Recurrida, si esta última presenta la prueba para sostener sus alegaciones de fraude, falsificación de identidad y la alegada falta de controles por parte de la Peticionaria.

Siendo ello así, y tomando como ciertas las alegaciones plasmadas en la *Demanda contra Terceros*, no procede la desestimación del caso a favor de la Peticionaria. El TPI no erró en su determinación.

**IV.**

Por los fundamentos antes expuestos, los cuales hacemos formar parte integral de la presente *Sentencia*, *expedimos* el recurso de *certiorari* y *confirmamos* la determinación recurrida.

Se devuelve el caso al foro de instancia para la continuación de los procedimientos consistentes con la presente *Sentencia*.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones